UNITED STATES COURT OF APPEALS
**Filed 8/27/96**
TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VINOL SCOTT WILSON,

Defendant-Appellant.

No. 96-3056
(D.C. No. 95-CR-40052)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before EBEL, LOGAN, and BRISCOE, Circuit Judges.

Defendant Vinol Scott Wilson appeals his conviction of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). We affirm.

On November 3, 1994, Topeka police officers obtained search warrants for both sides of a duplex at 1733 and 1735 SW Clay in Topeka (1735 SW Clay is at issue in this case and only that search warrant is contained in the record on appeal). In support of the warrants, Brian Hill, a Topeka police officer, filed an affidavit indicating he had been

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

supplied with information from two confidential informants indicating rock cocaine was being sold out of both sides of the duplex. One of the informants had told Hill that Wilson was living with his girlfriend at 1735 SW Clay. This same informant told Hill that he had purchased rock cocaine at 1735 SW Clay from Virgil Tibbs.

Police officers executed the warrants and searched the premises. As the officers had been informed that Wilson was a gang member who likely possessed weapons and they were concerned occupants of the residence would attempt to hide or destroy the cocaine, the officers made a "no-knock" entry, smashing the glass door of 1735 SW Clay with a battering ram. Police found Wilson sitting on the bed in a bedroom with a Ruger 9mm pistol and bullets lying on the bed. When an officer took the pistol from Wilson, he found the pistol was loaded. Officers also found $702 in cash, a digital scale, and a loaded Mossberg 12 gauge pistol-grip shotgun in the bedroom. Officers outside the premises observed Laccia Daniels attempting to escape through a bedroom window. She was holding plastic baggies in her right hand, which she threw onto the lawn. The baggies contained 9.48 grams of rock cocaine.

On June 28, 1995, a federal grand jury returned a three-count indictment against Wilson. In count 1, he was charged with possession with intent to distribute 9.48 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); in count 2, he was charged with using a Mossberg 12 gauge pistol-grip shotgun during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and in count 3, he was charged with using a Ruger 9mm semi-automatic pistol during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Prior to trial, Wilson filed a motion to reveal the identity of the government's informants and a motion to suppress evidence obtained by

2

the government during the search of 1735 SW Clay.  The district court conducted a hearing and denied the motions.

Wilson proceeded to trial on October 23, 1995.  After deliberating for approximately two days, the jury returned a verdict of guilty on counts 1 and 3, and not guilty on count 2.  Wilson's motion for judgment of acquittal was denied.  He filed a motion for rehearing of the motion for judgment of acquittal, asking that he be acquitted on count 3 based on Bailey v. United States, 116 S. Ct. 501 (1995) (clarifying the elements necessary for conviction under the "use" prong of 18 U.S.C. § 924(c)(1)).  The district court denied the motion on January 10, 1996, but granted Wilson a new trial on count 3.  The government filed a motion to dismiss count 3, which was granted.  Wilson was sentenced to a term of imprisonment of 78 months for his conviction of count 1.

Sufficiency of the Evidence

Wilson contends the evidence presented at trial was insufficient to support his conviction on count 1 of the indictment.  More specifically, he argues the government failed to demonstrate he had any connection with the cocaine base found on the lawn outside his residence.  He also argues there was insufficient evidence to establish his alleged intent to distribute the cocaine base.

In evaluating the sufficiency of evidence underlying a conviction, this court "must view the evidence--both direct and circumstantial, together with all reasonable inferences to be drawn therefrom--in the light most favorable to the government," United States v. Robertson, 45 F. 3d 1423, 1441 (10th Cir. 1995) (quoting United States v. Hooks, 780 F. 2d 1526, 1529 (10th Cir.), cert. denied 475 U.S. 1128 (1986)), cert. denied 115 S. Ct. 2259 (1995), in order to determine whether any rational trier of fact could find the

3

defendant guilty beyond a reasonable doubt, <u>United States v. Horn</u>, 946 F. 2d 738, 741 (10th Cir. 1991) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979)). "This deferential standard recognizes that it is 'the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" <u>Horn</u>, 946 F. 2d at 741 (quoting <u>Jackson</u>, 443 U.S. at 319).

Here, the jury was instructed on the theory of constructive possession. Generally, a person has constructive possession of narcotics if he knowingly has ownership, dominion, or control over the narcotics and the premises where they are found. <u>United States v. Hager</u>, 969 F. 2d 883, 888 (10th Cir.), <u>cert. denied</u> 506 U.S. 964 (1992). Constructive possession may be established by circumstantial evidence, but the government must show a sufficient nexus between the defendant and the narcotics. <u>Id</u>.

In this case, the government presented evidence that (1) a confidential informant had purchased rock cocaine at 1735 SW Clay from an individual named Virgil Tibbs; (2) the police executed a warrant to search 1735 SW Clay, which was rented by Wilson and Daniels; (3) when the police executed the warrant, Daniels attempted to escape through a bedroom window, but was caught with baggies containing rock cocaine, which she threw onto the lawn; (4) Wilson was arrested in the same bedroom from which Daniels had attempted to escape and was found sitting on the bed with a loaded handgun and bullets lying on the bed; and (5) the police also found $702 in cash, a scale, and a loaded shotgun in the bedroom. Although the evidence of Wilson's possession of the cocaine was entirely circumstantial, the evidence was sufficient to allow rational triers of fact to find him guilty beyond a reasonable doubt.

4

## Motion to Suppress

Wilson contends the district court erred in refusing to grant his motion to suppress evidence seized during the search. He argues the officers' "no-knock" method of entry was not justified by exigent circumstances particular to the case, the search was not constitutionally reasonable, and the fruits of the search should be suppressed.

On appeal from a denial of a motion to suppress, this court views the evidence in a light most favorable to the government and accepts the district court's findings of fact unless clearly erroneous. United States v. Maden, 64 F. 3d 1505, 1508 (10th Cir. 1995). This court reviews the district court's ultimate determination of reasonableness under the Fourth Amendment de novo. Id.

In Wilson v. Arkansas, 115 S. Ct. 1914 (1995), the Supreme Court held whether law enforcement officers knock and announce their presence and authority before entering a dwelling is a factor to be considered in determining the constitutional reasonableness of an ensuing search. The Court held "that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment." 115 S. Ct. at 1918. However, the Court emphasized it did not intend "to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." Id. "[U]nder circumstances presenting a threat of physical violence," or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given," announcement would not be necessary to comply with the Fourth Amendment. Id. at 1919.

Here, the district court made the following findings in rejecting Wilson's motion to suppress:

The offense with which the targets of the investigation were to be charged, trafficking in crack cocaine, is a serious offense. The officers knew that drug sales were occurring at both apartments of the duplex and that the operations were probably connected as evidenced by Tibbs' comment that he could be found at either apartment. Based on their information, the officers believed that the duplex was a crack house and that there was a lookout at 1735 S.W. Clay. For these reasons, the officers executed the warrants on the two apartments at the same time.

The crack cocaine rocks, which were the object of the search, were easily capable of being destroyed. The informants had observed that the rocks were individually packaged in small amounts. One informant had told officer Hill, who was one of the officers executing the warrant, that Jelani Lewis, the tenant at 1733 S.W. Clay had spit several rocks of cocaine from his mouth and sold the informant one of those rocks. From their experience in executing warrants on crack houses, the officers knew that often the crack houses are occupied by purchasers who are using the drugs. They also have seen instances where dealers have arranged for the rock cocaine to be kept in the bathroom so that it could be quickly flushed down the toilet in the event of a raid. There was a reasonable basis for believing that unless the officers acted quickly the drug dealers would destroy the drugs. In fact, when the officers executed the warrants, they restrained Jelani Lewis in 1733 S.W. Clay and one visitor at 1735 S.W. Clay from swallowing rock cocaine found in their mouths. They also found [Laccia] Daniels outside of the back bedroom window and a package of rock cocaine within throwing distance.

The officers knew there were people in Wilson's apartment. Looking through the glass screen door, they could see people in the living room. The officers had reason to fear that the people inside in the apartment would be armed and dangerous.

. . . .

Apart from [the officers'] general knowledge that guns are a frequent and integral element of drug trafficking, the officers had particular reasons to suspect that guns were present in Wilson's apartment. Prior to the search, Officer Hill conferred with an officer specializing in gangs and learned that Wilson was a member of the Vice Lords gang and that members of this gang were known to carry guns. During prior car stops, officers had found guns within Wilson's immediate proximity. In fact, when they executed the warrant, officers found a 9mm pistol at Wilson's feet and a pistol-gripped shotgun in his closet.

Considering the totality of the circumstances discussed above, the court finds that the unannounced execution of the warrant was not [an] unreasonable search under [the] Fourth Amendment. The failure to announce was fully justified by exigent circumstances.

RI doc. 31 at 21-24, citations omitted.

Wilson does not allege that the district court's findings are clearly erroneous and we find no evidence in the record that is contrary to these findings. It appears that the

6

officers who executed the warrants believed the occupants of the premises had weapons and would likely use them, and that the cocaine base could be easily destroyed if the occupants had enough time to do so. As for the constitutional reasonableness of the search, the main reasons forwarded by the officers for dispensing with an announcement provide a legitimate basis for concluding an announcement was not required in this case. See, e.g., Bodine v. Warwick, 72 F. 3d 393, 397 (3d Cir. 1995) (if an officer reasonably believed she was facing a threat of physical violence, Fourth Amendment would not require her to knock and announce prior to entering suspect's home); United States v. Murphy, 69 F. 3d 237, 243 (8th Cir. 1995) (exigent circumstances sufficient to excuse knock and announce requirement may exist where officers fear for their safety), cert. denied 116 S. Ct. 1032 (1996); United States v. Moland, 996 F. 2d 259, 260 (10th Cir. 1993) (federal officials executing search warrant do not have to announce if doing so is likely to result in destruction of evidence), cert. denied 510 U.S. 1057 (1994); United States v. Cuaron, 700 F. 2d 582 (10th Cir. 1983) (people coming and going from supplier's home, along with concern supplier would become nervous and flee or destroy evidence if buyer did not return to complete transaction, sufficient to establish exigent circumstances). The district court did not err in denying Wilson's motion to suppress.

### Motion to Disclose Identities of Confidential Informants

This court reviews the district court's refusal of a request to reveal the identity of a confidential informant for abuse of discretion. United States v. Leahy, 47 F. 3d 396, 398 (10th Cir. 1995). Disclosure of a confidential informant's identity, or the contents of communications, involves "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro v. United

States, 353 U.S. 53, 62 (1957). "A defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure." United States v. Reardon, 787 F. 2d 512, 517 (10th Cir. 1986). Disclosure is not required if the informant did not participate in the illegal activity or when information sought is cumulative. Id. An informant's testimony must be shown to be valuable to a defendant; mere speculation is not enough. United States v. Mendoza-Salgado, 964 F. 2d 993, 1001 (10th Cir. 1992). In United States v. Moralez, 908 F. 2d 565 (10th Cir. 1990), this court noted:

> [C]ases involving confidential informants fall into several broad categories. At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as Roviaro itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.

Id. at 568, citations omitted.

Here, the district court conducted a hearing on Wilson's motion to reveal the identity of the confidential informants and made the following findings:

> Despite Wilson's arguments to the contrary, the informants here are not direct participants in or percipient or transactional witnesses to the crimes charged. Neither informant actively participated in [the] investigation that targeted Wilson. At most, both informants were mere tipsters. They provided the information that led to the search warrant and to the search of Wilson's apartment. The record does not show that either informant said they had purchased drugs from Wilson. Neither informant was present during the search of Wilson's residence. Whatever the informants participated in or witnessed two days before the search is not the basis on which the criminal charges are brought. Wilson is charged with offenses --possession with the intent to distribute the crack cocaine and use of firearm during and in relation to a drug trafficking crime--based on what the officers found during their search. These counts have nothing to do with either of the drug sales made to the informants. Wilson is not charged with conspiring with Tibbs or Lewis to possess or distribute the crack cocaine. "In short, the informant's role ended after providing the police with the relevant information that served as the

8

foundation for obtaining the search warrant."

RI, doc. 31 at 5-6, citation omitted. Based on these factual findings, the district court concluded Wilson was "unable to show that the informants' probable testimony would be material and relevant to his defense that he did not intentionally possess the crack cocaine or firearms." Id at 6. Moreover, the court concluded there was nothing "to suggest that the informants would be material witnesses to whether Wilson constructively possessed the rock cocaine that [Laccia] Daniels apparently threw from Wilson's bedroom." Id. at 8. Finally, the court concluded "the informants have not been shown to have witnessed any events from which they could testify as to Wilson's lack of involvement in the drug trafficking activity occurring in his apartment." Id at 8-9.

Reviewing the record in light of Wilson's arguments, we conclude the district court did not abuse its discretion in denying Wilson's motion. To the contrary, the evidence introduced at the hearing on the motion indicated both informants were mere tipsters who had no personal knowledge concerning Wilson's alleged possession of the rock cocaine.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge