**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joel Roy BLACKWOOD,**
**Defendant–Appellant.**

No. 89–5639.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1990.

Decided Sept. 4, 1990.

Robert Lynn McClellan, Ivey, Ivey & Donahue, Greensboro, N.C., for defendant-appellant.

Benjamin Harvey White, Jr., Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., on brief), for plaintiff-appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.

PHILLIPS, Circuit Judge:

Joel Roy Blackwood appeals his conviction and sentence for possession with intent to distribute over 188 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Blackwood challenges the district court's denial of his pretrial motion to suppress evidence seized allegedly in violation of the fourth amendment and assigns error to the admission of two pieces of evidence. Blackwood also challenges the court's imposition of a sentence of life imprisonment under § 841(b)(1)(A)(iii).

We find no error in the denial of his suppression motion, nor in the admission of other evidence at his trial and we therefore affirm the conviction. But we conclude that the district court erred in imposing the life sentence and we therefore vacate that sentence and remand for resentencing.

I

In the early morning of November 29, 1988, North Carolina Alcohol and Beverage Control Officer C.L. Patrick obtained a warrant to search Joel Roy Blackwood's residence. In an affidavit sworn before a Winston–Salem deputy clerk of court, Patrick averred the following facts: Within

the previous seventy-two hours, Patrick had received information that crack was being stored in and sold from Blackwood's residence. Acting on this information, he enlisted a "reliable and confidential informant" to attempt to buy drugs from Blackwood at his residence. The informant had previously given him information that had proven "true and accurate," and the informant had been used in undercover operations before and had not revealed Patrick's identity. The informant was a past user of cocaine, familiar with its look and smell and how it was sold. Patrick arranged surveillance to watch the informant attempt to buy cocaine from Blackwood. The informant described to Patrick the way in which the sale would proceed; the informant would have to go to another apartment on the same street and place an order with a particular individual, who in turn would go to Blackwood's apartment to buy the drugs. While Patrick watched, the informant went into the designated apartment. Two minutes later, a man came out, went to Blackwood's apartment, knocked, went in, emerged thirty seconds later, and returned to the apartment where the informant was waiting. After a brief time, the informant then walked back to where Patrick was watching and handed him an off-white rocky substance, which was determined by field test to be crack cocaine.

On the basis of these facts, the deputy clerk issued a warrant to search 1112 West Academy Street, the place described in the affidavit.[1] The search conducted by Patrick and other state officers uncovered 188.72 grams of crack cocaine, street value $20,000, some of it loose and some packaged in glassine bags, in various places around the apartment. The officers found no drug-user paraphernalia. In addition to the crack, the officers also discovered a .22 caliber revolver under Blackwood's bed and a large amount of cash in ten-, twenty-, and fifty-dollar bills stuffed under the carpet. The officers also seized several items bearing Blackwood's name, including a phone bill, which also showed the address of the apartment, a United States Department of State receipt, a video library membership, and two Jamaican passports. During the search, the police questioned, then let go, a woman who was in Blackwood's apartment, but arrested Blackwood himself.

The State brought charges against Blackwood, but dropped them after he was indicted on federal drug and firearms charges. After a pretrial hearing, the district court denied Blackwood's motion to suppress the evidence found in the search. At the close of evidence in the April 1989 trial, the district court granted Blackwood's motion for acquittal on the firearms charge, 18 U.S.C. § 924(c)(1). The jury, however, found Blackwood guilty of unlawful possession of, with intent to distribute, 188.72 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On July 10, 1989, the court held a sentencing hearing and sentenced Blackwood to life imprisonment under the mandatory sentencing provisions of § 841(b)(1)(A)(iii).

## II

■ Blackwood's first contention is that the district court erred in denying his motion to suppress evidence gained in the search of his residence. He claims that

---

**1.** As it turned out, Blackwood's entry had an address of 1114 West Academy Street, although 1112 was the address of the duplex building as a whole. The police did not discover the discrepancy in addresses until they were at Blackwood's doorway and noticed 1114 in one-inch high numbers over the door. The officers proceeded with the search, believing that the further delay necessary to correct the warrant would pose an unreasonable risk that the cocaine believed to be inside would be disposed of. In any event, the warrant described the place to be searched with sufficient particularity to enable the executing officer "with reasonable effort [to] ascertain and identify the place intended," *Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925), especially since the affiant, Patrick, also executed the search. *See* LaFave, 2 *Search and Seizure* § 4.5(a), at 209–11 (in cases where warrant contains technical inaccuracy, courts should be receptive to showing that executing officer had knowledge of particular place to be searched). This warrant incorporated the description of the premises in Patrick's affidavit, which stated, among other details, that "the premises to be searched is the front door to the right of the duplex as you look at the duplex looking southwest from the 1100 block of Academy Street."

Officer Patrick did not set out enough reliable information in his warrant application before the deputy court of clerk to support the clerk/magistrate's finding of probable cause. We disagree.

In reviewing the magistrate's probable cause determination, we must accord "great deference" to the magistrate's assessment of the facts presented to him. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We may ask only whether the magistrate had a " 'substantial basis ... for conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332-33, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Our already deferential review should also recognize that the probable cause standard guiding the issuing magistrate "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329. The magistrate is required "simply to make a practical, commonsense decision whether, given all the circumstances in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332. Because of the fourth amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to "invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* at 236, 103 S.Ct. at 2331 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

We think the magistrate in this case had before him a substantial basis for concluding that probable cause existed under the totality-of-the-circumstances approach mandated by *Illinois v. Gates*. The information presented to the magistrate detailed the fruits of Patrick's effort to corroborate the initially vague information he received. After seeking the assistance of a known,

trusted, and previously relied-on informant, Patrick himself observed the purchase as it unfolded, each step of which corroborated the informant's description of how the purchase would occur. Patrick's efforts at corroboration, and his precise description of what he saw on surveillance, exemplify the kind of independent police work that can lend probative value, for probable cause purposes, to otherwise vague information. *See Gates*, 462 U.S. at 241, 103 S.Ct. at 2334 ("Our decisions ... have consistently recognized the value of corroboration of details of an informant's tip by independent police work."); *Jones*, 362 U.S. at 269, 80 S.Ct. at 735; *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Blackwood brings a plethora of isolated attacks on the sufficiency of the affidavit to establish probable cause. Among other things, he cites the affidavit's lack of indicia of the reliability of the actual purchaser of the cocaine, as opposed to the police informant who waited in the apartment; the affidavit's lack of a statement that the informant himself actually tried to make a buy or saw drugs in the apartment; the affidavit's lack of information about the "chain of custody" of the crack, *i.e.*, whether Blackwood actually gave these drugs to the buyer and whether the buyer actually passed the same cocaine to the informant; and so on. These challenges, and the numerous others detailed in Blackwood's brief, simply misconstrue the nature of our probable cause inquiry. We emphasize again that we may consider only whether the magistrate had before him a substantial basis for concluding that probable cause existed. None of Blackwood's contentions cast any serious doubt on whether the magistrate could have concluded that there was a "fair probability" that cocaine would be found at Blackwood's residence, *cf. Spinelli*, 393 U.S. at 419, 89 S.Ct. at 590 ("only the probability, and not a prima facie showing, of criminal activity, is the standard of probable cause"). Rather, those contentions, considered individually and in the aggregate, invite us to engage in just

the kind of hypertechnical scrutiny of immaterial omissions in the affidavit that the Supreme Court has expressly condemned. In short, we think the magistrate, crediting Patrick's description of his surveillance, could have concluded that cocaine would probably be found at Blackwood's residence.[2]

## III

Blackwood next claims error in the admission of two pieces of evidence. The district court did not abuse its discretion in admitting either.

### A

■ In one of the rooms searched, the government found two Jamaican passports in Blackwood's name. Blackwood made a motion in limine to exclude these passports as being unfairly prejudicial under Fed.R. Evid. 403. Specifically, Blackwood contended that the passports might excite xenophobic hostility in the jurors, while adding nothing to the prosecution's case-in-chief, which included other evidence establishing Blackwood's ownership of the apartment. The district court denied Blackwood's motion, accepting the government's argument that the probative value of the evidence for showing Blackwood's control over one of the rooms where drugs were located outweighed any unfairly prejudicial effect it might have. The government stated that the passports were the only identification evidence linking Blackwood to one of the rooms in the apartment in which drugs were found. Because it had the burden of showing that Blackwood had constructive possession of those drugs, by showing that he had power to exercise dominion or control over the room in which they were found, the government sought to show that Blackwood in fact used that room. At the hearing on the motion, the government expressed concern that, be-

cause all of the other identification evidence was found in a different room, Blackwood might argue that he did not have control over the room in question. See J.A. at 71 (prosecutor's statement that "[I]t's becoming increasingly important based on the defense I see coming here, that the defendant didn't have any knowledge that the drugs were there and somebody else must have slipped in the back door and put them there.").

After hearing the conflicting arguments, the district court admitted the passports into evidence. The court opined that it saw no reason why the government should not be able to use the evidence for the purpose asserted, and that it also failed to see any prejudice flowing from the possession of Jamaican passports. Without more than the bare assertion made here, we likewise decline to impute to the jurors in this case the kind of xenophobia that could constitute "unfair prejudice" under Rule 403. This ruling was not an abuse of discretion.

### B

■ The other contested ruling was the admission of testimony by a North Carolina Alcoholic Beverage Control officer that the seizure was the largest of its kind ever made in Forsyth County. The court admitted this testimony, over Blackwood's objection, accepting the government's contention that this evidence was relevant to proving intent to distribute. Blackwood claims that the district court abused its discretion in admitting this evidence on the grounds that it is either irrelevant under Fed.R.Evid. 401 or unfairly prejudicial under Rule 403.

We see no abuse of discretion in the admission of this testimony. Evidence that the quantity of cocaine seized in this case was larger than any amount seized before in the county could have aided the jury in assessing the significance of the quantity,

---

2. Because we hold that probable cause supported the issuance of the warrant, we need not consider the government's alternative argument that the evidence found in the search could be admitted under the good-faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677

(1984) (exclusionary rule does not bar admission of evidence gained by officers acting in objectively reasonable reliance on a warrant later determined to be invalid). We note, however, that Leon appears to us plainly to apply, and Blackwood has presented no contrary argument.

particularly in terms of the likelihood that it was intended for distribution. Any prejudice flowing from this evidence could be deemed "unfair" within the meaning of Rule 403. *See* Fed.R.Evid. 403 Advisory Committee note ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). To the extent, however, that some "unfair prejudice" might be perceived in this statement, we are satisfied that it was outweighed by the probative value of the statement on the issue of intent, and, more basically, that any arguable error in the court's striking of that balance was harmless. *See United States v. Davis*, 657 F.2d 637, 640 (4th Cir.1981).

## IV

█ Finally, Blackwood challenges the court's imposition of a sentence of mandatory life imprisonment without parole under 21 U.S.C. § 841(b)(1)(A)(iii). That subparagraph provides in relevant part:

(1)(A) In the case of a violation of subsection (a) of this section involving—

\*     \*     \*     \*     \*     \*

(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base ...

\*     \*     \*     \*     \*     \*

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life.... If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprison-

ment.... If any person commits a violation of this subparagraph or of section 845, 845a, or 845b of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. For purposes of this subparagraph, the term "felony drug offense" means an offense that is a felony under any provision of this subchapter or any other Federal [criminal drug] law ... or a felony under any law of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

The district court sentenced Blackwood to a mandatory term of life imprisonment under this statute because his record showed two prior state felony drug convictions. Anticipating that he may have misapplied this statute, Judge Ward imposed an alternative Guidelines sentence of 262 months, at the top of Blackwood's otherwise applicable Guidelines range.[3] We affirm that alternative Guidelines sentence and vacate the sentence of life imprisonment.

As the district court recognized, Blackwood's record formally indicated two prior convictions, but those convictions arose out of a single criminal episode. In 1981, Blackwood was arrested by North Carolina police officers for possessing a large quan-

---

**3.** After rejecting Blackwood's challenge to the presentence report recommendation of a two-level enhancement for possession of a weapon during a drug offense, the district court concluded that Blackwood had a Criminal History Category of II and an Offense Level of 36, thus yielding a sentencing range of 210–262 months. The permissible sentencing range was actually 240–262 months, as it is undisputed that Blackwood was at least subject to § 841(b)(1)(A)(iii)'s mandatory minimum sentence of 20 years, and the district court would not have been free to

sentence below that minimum without departing. *See* United States Sentencing Guidelines § 5G1.1(c); *infra*, n. 4. As the government did not move for downward departure based on the defendant's substantial assistance, the court would have lacked authority to make such a departure. *See* 18 U.S.C. § 3553(e) (departures below statutorily required minimum sentences authorized only upon government's motion requesting departure to reflect defendant's substantial assistance).

tity of marijuana in a pickup truck that he was driving when arrested. Less than two hours later, the officers secured a warrant to search the motel room where Blackwood was staying at the time. There, they found an even greater quantity of marijuana. A grand jury returned two separate bills of indictment, one for possession of the marijuana in the pickup truck and one for possession in the motel room. The two cases were assigned separate criminal docket numbers but consolidated for trial. Blackwood was convicted of both possession charges and sentenced to two consecutive five-year sentences. The North Carolina Court of Appeals ruled, *inter alia*, that the consolidation was appropriate, but remanded the case for resentencing because the trial court had not properly considered aggravating and mitigating factors. At resentencing, Blackwood again received two five-year sentences, but these were now to run concurrently. In ruling that the trial court had not abused its discretion in consolidating these cases, the North Carolina Court of Appeals stated:

> When a defendant is charged with two or more offenses that "are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan," consolidation is authorized in the discretion of the court. G.S. 15A–926(a). Both charges here stem from defendant's possession with intent to sell

marijuana within a limited geographical area and period of time. The charges clearly related to a series of connected acts and transactions, and there was no abuse of discretion in their consolidation.

*State v. Blackwood*, 298 S.E.2d 196, 199 (N.C.App.1982).

Blackwood contends that because the North Carolina state courts viewed these two convictions as no more than two components of a single act of criminality—"defendant's possession with intent to sell marijuana within a limited geographical area and period of time"—we should construe them as a single conviction for purposes of sentencing under § 841(b)(1)(A)(iii). We agree with the North Carolina courts' view of these convictions and accordingly with Blackwood's argued application of § 841(b).[4]

The government argues that the plain meaning of § 841(b)(1)(A)(iii) requires that the two convictions be counted separately for enhancement purposes, regardless of the fact that the state courts expressly viewed them as part of a single transaction. While this plain meaning argument has some superficial appeal, it contradicts a unanimous body of federal case law construing the apparently plain language of a nearly identical federal sentencing enhancement statute.[5] Furthermore, Congress has indicated both in § 841(b) itself and elsewhere that the language "prior" or

---

**4.** Although we agree with the North Carolina courts' view of these convictions as related, we reject that part of Blackwood's argument stating that the Sentencing Guidelines' Criminal History provisions, in particular § 4A1.2 application note 3 (defining "related cases" that should be counted as a single case), require us to treat these convictions as related. While it is true that these convictions would satisfy the definition of "related cases" found in that guideline, we are concerned here with the construction of a federal criminal statute, not with the computation of Guidelines criminal history. The Guidelines do apply to the conduct in this case, but § 5G1.1 requires us to determine the applicability of any statutorily required minimum sentence independently of the otherwise applicable guidelines range; the statutory sentence "shall be" the guidelines sentence if it is greater than the otherwise applicable guidelines range. *See* Guideline § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the

maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). Similarly, § 5G1.1(c) provides that where there is a statutorily required mandatory sentence that falls within the otherwise applicable guidelines range, the Guidelines sentence shall be "not less than [the] statutorily required minimum sentence."

As noted, *see supra*, n. 3, Blackwood's unchallenged Criminal History category was II, and Offense Level 36, yielding an otherwise applicable guidelines sentencing range of 210–262 months. Counting the one unquestioned qualifying prior conviction, however, the permissible range under § 5G1.1(c) would have been 240 months (20 years)–262 months.

**5.** We have found no other reported case reviewing the application of § 841(b)(1)(A)(iii)'s mandatory life sentence for three-time drug offenders.

"previous convictions," when used for sentencing enhancement, means separate criminal episodes, not separate convictions arising out of a single transaction.

In *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986) (*Petty I*), the government advanced in the context of the sentencing enhancement provision of 18 U.S.C.App. § 1202(a) the same argument made here. At the time, § 1202(a), the predecessor to 18 U.S.C. § 924(e), provided that a person who violated the federal law prohibiting a felon's possession of a firearm and who "had three previous convictions . . . shall be imprisoned not less than fifteen years [without possibility of release]."[6] The defendant Petty formally had six "previous convictions" stemming from his simultaneous robbery of six individuals at a restaurant. Upon its first consideration of the issue, the Eighth Circuit agreed with the government that Petty had six "previous convictions" within the meaning of the statute. The Supreme Court granted certiorari in the case. In his brief to the Supreme Court, the Solicitor General reversed the government's stance on the sentencing issue and opined that the Eighth Circuit had indeed erred in ruling that Petty had six previous convictions. The brief argued that Congress intended the statute to enhance punishment for multiple criminal episodes that were distinct in time, as opposed to multiple convictions arising out of a single criminal episode. The Supreme Court remanded for reconsideration in light of the government's changed position, *Petty v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), and the Eighth Circuit on remand ordered resentencing in accordance with the position the government now was taking. *United States v. Petty*, 828 F.2d 2, 3 (1987) (*Petty II*). Every circuit that considered the question adopted the view outlined by the Solicitor General that "previous convictions" meant previous criminal episodes that were distinct in time, rather than the multiple, "literal" convictions that might result from a "single spasm of criminal activity." *United States v. Towne*, 870 F.2d 880, 889 (2d Cir.1989); *accord United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.1988); *United States v. Harden*, 846 F.2d 1229, 1232 (9th Cir.1988); *United States v. Greene*, 810 F.2d 999, 1000 (11th Cir.1986).

When it enacted the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181, Congress expressly ratified this line of cases and amended § 924(e) to clarify the substantive meaning of "previous convictions." In § 7056 of the Act, entitled "Clarification of Predicate Offense Requirements for Armed Career Criminal Act," Congress inserted into § 924(e) the language "committed on occasions different from one another," after "three previous convictions . . . for a violent felony or a serious drug offense, or both." The Judiciary Committee's section-by-section analysis of the Act, issued by the Committee's chairman, Senator Biden, described and rejected the interpretation the *Petty I* court had given the language in § 924(e). After noting that the Solicitor General "on behalf of the United States confessed error" in the court's interpretation, Senator Biden explained that the language of the amendment—"committed on occasions different from one another"—would make clear the "interpretation [that] was intended here." 134 Cong.Rec. S17360, S17370 (daily ed. Nov. 10, 1988). He further noted that Congress had intended this interpretation even though § 924(e) "lacked descriptive language found in other similar federal statutes." *Id.; see* 18 U.S.C. § 3575(e)(1) (now repealed); 21 U.S.C. § 849(e)(1) (both expressing notion that prior convictions must have been committed on different occasions). Senator Biden elaborated:

> This interpretation plainly expresses that concept of what is meant by a "career criminal," that is, a person who over the course of time commits three or more of the enumerated kinds of felonies and is convincted therefor. It is appropriate to clarify the statute in this regard, both to avoid future litigation and to insure that its rigorous sentencing provisions apply

---

**6.** Congress later recodified the enhancement provision of 18 U.S.C.App. § 1202(a) in 18 U.S.C. § 924(e) without changing the language "three previous convictions."

only as intended in cases meriting such strict punishment.

*Id.*

When it created § 841(b)(1)(A)(iii)'s enhancement to a mandatory life sentence in § 6452 of the Anti–Drug Abuse Act, however, Congress did not include "descriptive language" stating that the predicate prior convictions must have occurred on occasions distinct in time. The legislative history of the § 841(b) enhancement is silent on the treatment of multiple convictions stemming from a single criminal episode. From this, we could infer either that Congress intended a substantive difference between § 841(b)'s enhancement and § 924(e)'s or, alternatively, that in drafting the § 841(b) enhancement Congress simply did not advert to the possibility that a court might again founder in the same type of confusion and "error" that the Eighth Circuit committed in *Petty I*—and that Congress subsequently condemned. We think the latter inference is the more probable. Although the language of § 841(b)'s enhancement appears to be "plain," it is no more so than was the language of § 924(e) before its "clarifying" amendment. Five courts of appeals, the Solicitor General, and, finally, Congress found "error" in the exactly analogous plain meaning argument that we now consider in the context of § 841(b). Because that reading would "thwart the clear legislative goals," *Towne*, 870 F.2d at 890, for § 841(b), we decline to lapse into analogous error and initiate a process of judicial and legislative tinkering similar to that which followed *Petty I*.

The structure of § 841(b)(1)(A)(iii) indicates the legislative goals for that section and provides further evidence that our interpretation reflects Congress' intent for its mandatory sentence enhancements. A person who violates § 841(a) and meets one of the predicate definitions of drug offenders subject to § 841(b)(1)(A) mandatory sentencing, *see* § 841(b)(1)(A)(i)–(viii), receives a mandatory minimum of ten years imprisonment. The next step provides that if that person has one qualifying prior conviction upon violating § 841(a), he receives a mandatory minimum of twenty years and a maximum of life. The next and final step provides that if that person has two qualifying convictions upon violating § 841(a), he receives life without possibility of release. In the structure of these mandatory enhancement provisions, Congress has mandated a progressive, incremental, "stairstep" approach to punishment of repeat offenders.

Although, as noted, the legislative history of these provisions does not directly speak to the problem of treating related convictions separately, that history gives some indications of the intent and expectation that § 841(b)'s increased punishments would turn on criminal episodes that occurred at distinct *times*. Congress denominated § 6452 of the Anti–Drug Abuse Act, which created this mandatory life sentence, "Life in Prison for *Three–Time* Drug Offender." Senator Boschwitz, describing some of the Act's provisions on the Senate floor, similarly referred to § 6452 as "a *'three-time* loser' for dealers, with mandatory life sentences for *third-time* drug trafficking offenses." 134 Cong.Rec. S12637, S12638 (daily ed. Sept. 15, 1988). These references, though lacking independent probative force, certainly corroborate Congress' intent that the predicate convictions should have occurred on occasions "distinct in time." *Cf. Petty II*, 828 F.2d at 3.

## V

For the foregoing reasons, we affirm Blackwood's convictions, vacate the sentence imposed, and remand for entry of the alternative Guidelines sentence imposed.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.