**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                  No. 95-5507

DAVID CARROLL,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-94-519-A)

Argued: April 11, 1997

Decided: May 5, 1997

Before WILKINSON, Chief Judge, and MICHAEL and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel E. Ellenbogen, Washington, D.C., for Appellant.
James L. Trump, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Helen F. Fahey, United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David Carroll appeals his mandatory life sentence under 21 U.S.C. § 841 for dealing crack cocaine. Carroll contends that the district court erroneously found the substance he sold was crack cocaine and that he had sold more than fifty grams of it. Carroll also argues that the court incorrectly found that he had two prior felony drug convictions. We conclude that the presence of moisture in the crack cocaine sold by Carroll does not affect the soundness of the district court's factual findings as to the weight and identity of the drug, and that the district court correctly determined Carroll's previous felony drug convictions arose out of separate incidents. Accordingly, we affirm the judgment of the district court.

I.

In November 1993, the Arlington County Police arranged for Timothy Owen, a police informant, to make several controlled purchases of cocaine from the defendant, David Carroll. Owen purchased crack cocaine, powder cocaine, and cocaine hydrochloride from Carroll on eight different occasions from November 17, 1993 to October 26, 1994.

On November 9, 1994, the investigation into Carroll's drug sales culminated when the police arranged for Owen to purchase two ounces of cocaine base ("crack cocaine") at Carroll's drug lab. After being wired, Owen entered Carroll's shop where Carroll prepared two ounces of crack cocaine by mixing cocaine hydrochloride, baking soda, and water and "cooking" it in a beaker. When Carroll was finished cooking, he put the crack cocaine into a plastic bag and sold it to Owen for $2,500.

After Owen left the warehouse where Carroll's shop was located, police entered to arrest Carroll and execute a search warrant. Carroll

2

fled the warehouse and was arrested outside. In Carroll's shop, the police discovered various materials used in the production of crack cocaine including a scale, filters, baking soda, inositol used to cut cocaine, and a test tube with cocaine residue. They also seized 14.1 grams of crack cocaine and 14 grams of cocaine hydrochloride. Further investigation determined that Carroll had sold Owen 61.79 grams of crack cocaine.

A jury convicted Carroll of ten drug related counts including manufacturing and distributing crack cocaine. Because of Carroll's prior felony drug convictions and the amount of crack cocaine involved, the district court sentenced Carroll to mandatory life imprisonment pursuant to 21 U.S.C. § 841(b). Carroll appeals his sentence.

II.

A.

Carroll first contends that the substance he sold Owen on November 9, 1994 was not crack cocaine. Therefore, he argues he should not have been subject to a mandatory life sentence under 21 U.S.C. § 841(b). Whether the substance distributed by Carroll was crack cocaine is a factual finding made by the district court at sentencing. United States v. Munoz, 36 F.3d 1229, 1238 (1st Cir. 1994). We thus review the district court's determination for clear error.

More than ample evidence confirms that the substance was indeed crack cocaine. The government's expert witness, Lois Greer, a forensic chemist, tested the substance and testified at Carroll's trial that it was clearly crack cocaine. On cross-examination, Carroll's counsel questioned Greer as to whether she had tested the substance to determine if it might have been another material, for example, cocaine hydrochloride. Greer responded that she had indeed tested the substance for the presence of cocaine hydrochloride and found no evidence that the substance consisted of anything but crack cocaine. Furthermore, although Carroll had retained his own chemist to examine the material, he never called this chemist to the stand or presented any testimony that conflicted with Greer's.

3

Carroll, relying primarily on United States v. Davis, 864 F. Supp. 1303 (N.D. Ga. 1994), argues that the substance he sold was not crack cocaine because it was still moist when it was sold and was therefore not "smokeable." This circuit, however, has rejected the Davis approach. See United States v. Fisher, 58 F.3d 96, 99 (4th Cir. 1995). Nothing in the statute or sentencing guidelines defines cocaine base by reference to smokeability. However, even if we adopted the Davis approach, there is no evidence that the crack cocaine sold by Carroll was not smokeable. Crack cocaine is not ignited like a cigarette. Instead, it is melted and the vapors are inhaled. Thus, crack cocaine need not be dry to be smoked. United States v. Tucker, 20 F.3d 242, 244 (7th Cir. 1996). Therefore, under any theory, the substance sold by Carroll was crack cocaine.

B.

Carroll also disputes the district court's finding as to the amount of crack cocaine sold to Owen. He argues that the district court improperly included moisture in the crack cocaine that was left over as part of the "cooking" process when it determined that Carroll had sold 61.79 grams of crack cocaine. The district court's calculation of drug quantity is a factual finding which must be upheld unless clearly erroneous. United States v. Lamarr, 75 F.3d 964, 972 (4th Cir. 1996).

The United States Code prescribes a mandatory life sentence for an individual who is convicted of manufacturing or distributing 50 grams or more of a "mixture or substance" containing crack cocaine and who has "two or more prior convictions for a felony drug offense." 21 U.S.C. § 841(b). In Chapman v. United States, 500 U.S. 453 (1991), the Supreme Court analyzed the meaning of the term "mixture or substance." The Court explained that in creating penalties for drug trafficking, Congress had adopted a "market-oriented" approach, under which the total quantity of the substance or mixture that was distributed, and not the amount of the pure drug contained in the substance, is used to determine the appropriate sentence. Id. at 461. The Court went on to recognize that this congressional decision was particularly relevant in determining quantities of cocaine for sentencing purposes.

> Congress clearly intended the dilutant, cutting agent or carrier medium be included in the weight of [cocaine or heroin]

4

for sentencing purposes. Inactive ingredients are combined with pure heroin or cocaine, and the mixture is then sold to consumers as a heavily diluted form of the drug. In some cases, the concentration of the drug in the mixture is very low . . . . [U]nder the language of the statute the weight of the mixture or substance, and not the weight of the pure drug is controlling.

Id. at 460.

Under the Chapman approach, it is clear that any moisture retained in the crack cocaine due to the cooking process must be included in the weight of the crack cocaine for sentencing purposes. Carroll himself included the weight of the moisture when he sold the crack cocaine to Owen as two ounces, and Owen paid the market value for two ounces of crack cocaine, $2,500. Thus, under Chapman's market based analysis, Carroll was clearly responsible for the full weight of the substance he sold. The Seventh Circuit, analyzing an analogous case, reached the same result.

Cocaine base is made by mixing cocaine and baking soda and boiling it in water, and in so doing, the water becomes mixed with the cocaine base. . . . All three ingredients are part of a whole, blended together, and therefore comport with the common understanding of "mixture" recognized in Chapman.

Tucker, 20 F.3d at 244.

We conclude that under Chapman, the district court's factual finding that Carroll sold 61.79 grams of crack cocaine must be upheld.

III.

Carroll further disputes his sentence under 21 U.S.C. § 841, contending that the district court improperly determined that he had "two or more prior convictions for a felony drug offense." Carroll was convicted in Arlington County, Virginia for distributing cocaine on March 17, 1986, March 20, 1986, and April 8, 1986. He was also con-

5

victed in Alexandria, Virginia for distributing cocaine on April 15, 1986. Carroll argues that these convictions were so related that they should only count as one conviction, arguing that "but for the accident of geography, all of these events would have been prosecuted in a single case in one court."[1]

We disagree with Carroll's contention. In United States v. Blackwood, 913 F.2d 139 (4th Cir. 1990), we held that to be considered "separate convictions," offenses "should have occurred on occasions `distinct in time.'" Id. at 147 (citation omitted). Other circuits have adopted the Blackwood approach. For example the Eleventh Circuit in United States v. Rice, 43 F.3d 601, 608 (11th Cir. 1995), held that "convictions which occur on different occasions or are otherwise distinct in time may be considered separate offenses under section 841(b)(1)(A)." See also United States v. Pace , 981 F.2d 1123, 1131-32 (10th Cir. 1992); United States v. Hughes, 924 F.2d 1354, 1360-61 (6th Cir. 1991).

Carroll's previous convictions were clearly separate crimes which occurred at different times in different locations. This is not like the situation in Blackwood, where the criminal incidents occurred within two hours of one another. Rather, Carroll's conviction in Alexandria was based on an incident which occurred nearly a week after the last incident in Arlington. The fact that the specific crimes in question were part of an extended spree of drug sales cannot justify treating Carroll's convictions arising from that course of illegal conduct as a single conviction. To adopt such an approach would undermine the purpose of the repeat offender statute.

> An ongoing course of criminal conduct . . . may involve many . . . criminal episodes, each a discrete occurrence. The fact that all are related, part of a series, or part of a continuous course of criminal dealing, does not necessarily render

_____

**1** As an initial matter, we note that Carroll's attempts to analogize "separate convictions" in 21 U.S.C. § 841 to "related cases" under section 4A1.2 of the Sentencing Guidelines are not relevant to this case. As we noted in United States v. Blackwood, 913 F.2d 139, 145 n.4 (4th Cir. 1990), "we are concerned here with the construction of a federal criminal statute, not with the computation of a Guidelines criminal history."

6

them a `single' criminal episode, particularly where the episodes occur over time. To so hold would insulate the very career criminals the statute is designed to reach-- those continuously engaged in criminal conduct.

United States v. Liquori, 5 F.3d 435, 437-38 (9th Cir. 1993) (citation omitted). We therefore find that the district court properly sentenced Carroll as required by 21 U.S.C. § 841(b). **2**

IV.

For the foregoing reasons we affirm the judgment of the district court.

AFFIRMED

_____

**2** We need not address Carroll's contention that the district court abused its discretion by refusing to depart downward as the court was bound to sentence Carroll to life imprisonment under 21 U.S.C. § 841(b).