**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Quincy A. GOINS, Defendant–**
**Appellant.**

No. 01–5462.

United States Court of Appeals,
Sixth Circuit.

Dec. 2, 2002.

Before DAUGHTREY, GILMAN, and GIBSON,[*] Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Quincy Goins was convicted of trafficking in crack cocaine and sentenced to life in prison. He now appeals, arguing that the district court erred in (1) denying his motion to suppress the evidence recovered from his residence, (2) denying his motion for a judgment of acquittal at the close of the government's case-in-chief, and (3) sentencing him to life in prison based upon his two prior felony convictions. For the

reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

In July of 2000, the Harriman Police Department (HPD) conducted a two-week investigation into suspected drug-related activity at Goins's residence in Harriman, Tennessee. The investigation culminated with the purchase of crack cocaine at that location by a confidential informant. In order to obtain a warrant to search the residence, the HPD presented an affidavit describing the investigation to a state trial judge. Based upon the affidavit, a warrant was issued on July 18, 2000, less than 72 hours after the crack cocaine was purchased.

The warrant required that the search of Goins's residence occur within five days of its issuance. Due to a lack of resources and a concern for protecting the identity of the confidential informant who had made the controlled drug purchase, the HPD waited until the third day, July 21, 2000, to execute the warrant. On that date, the HPD initiated the search in a manner designed to reduce the likelihood that Goins would destroy any contraband upon seeing the arrival of police officers. This was accomplished by a detective with the HPD making a false report of a music disturbance at Goins's residence, a report that the HPD dispatcher then broadcast over the police radio. The HPD anticipated that Goins would hear the broadcast over the police scanner that he kept on the premises, and that he would therefore not suspect that the officers who arrived shortly thereafter were coming to conduct a search.

[*] The Honorable John R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

When two officers knocked on the front door of Goins's residence, Goins answered and began discussing the reported music disturbance with them. Several additional officers then arrived on the scene, at which time Goins was informed of the warrant and told to get on the ground. Rather than comply with this command, Goins attempted to retreat toward a bathroom near the rear of his residence. Two of the officers grabbed Goins, and a struggle ensued.

During the struggle, Goins punched one of the officers in the face and twice threw the other officer into a wall. Goins was finally subdued at the end of a narrow hallway leading from the front door to the bathroom. He was removed from the bathroom doorway and taken outside. Two other individuals who had remained in the living room during the struggle were also escorted from the premises. Another person who had fled the residence through the kitchen window was apprehended a short time later.

An officer videotaped the interior before the search began. The tape shows what appears to be a bag of crack cocaine near the toilet in the bathroom where Goins had been subdued. During the subsequent search, the HPD recovered the bag, a police scanner, a small fire safe containing $21, and baking soda (a substance often used in the production of crack cocaine). Analysis later showed that the bag contained 105.5 grams of crack cocaine, an amount with a street value of between $50,000 and $60,000.

## B. Procedural background

A federal grand jury indicted Goins on one count of possessing crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Goins filed a pretrial motion to suppress all of the evidence recovered from his residence, arguing that the probable cause that justified the issuance of the warrant to search his house had grown stale by the time the HPD executed the warrant. The district court denied Goins's motion.

Goins's trial commenced in November of 2000 and ended with a mistrial after the jury was unable to reach a verdict. He was tried again the following month. Upon the conclusion of the government's case-in-chief at the second jury trial, Goins moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied Goins's motion. He was ultimately found guilty by the jury.

A presentence report (PSR) was prepared prior to Goins's sentencing hearing. The PSR recommended a sentence of life in prison based upon 21 U.S.C. § 841(b)(1)(A), a statute that mandates such a sentence if a defendant has been previously convicted of two or more drug felonies. Goins objected to the PSR, arguing that his two prior drug felonies were part of the same criminal episode and should therefore be combined for the purpose of sentencing. After overruling this objection, the district court sentenced Goins to life in prison. Goins now appeals.

## II. ANALYSIS

### A. Motion to suppress

■ Goins first contends that the district court erred in denying his motion to suppress the evidence removed from his residence by the HPD. When reviewing a motion to suppress evidence, we will set aside a district court's factual findings only if we conclude that they are clearly erroneous. *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). Conclusions of law, however, are reviewed de novo. *Id.*

The Fourth Amendment provides that a search warrant may be issued only upon a

showing of probable cause. U.S. Const. amend. IV. Probable cause for a search exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The likelihood that a search will lead to the discovery of such materials must be assessed in a "practical, commonsense" manner that takes into account the totality of the circumstances. *Id.*

In the present case, the HPD offered the affidavit of Detective Kristopher Mynatt in support of its request for a warrant to search Goins's residence. Mynatt's affidavit set forth that (1) a citizen had complained that individuals were frequently visiting Goins's residence at irregular hours and for short periods of time, (2) Goins had been convicted of drug distribution on two prior occasions, (3) four rock-like substances that appeared to be crack cocaine were recovered from a vehicle exiting Goins's residence on July 15, 2000, and (4) a confidential informant had purchased crack cocaine from an unidentified individual at Goins's residence within 72 hours prior to the execution of the affidavit. The state trial judge to whom the affidavit was presented determined that these facts, when considered in their totality, created a "fair probability" that illegal drugs and other drug-related paraphernalia would be found in Goins's residence.

Goins concedes that this conclusion was correct as of July 18, 2000, the date on which the warrant was issued. He maintains, however, that the probable cause that justified the issuance of the warrant had fully dissipated by the time that the HPD searched his residence three days later. Goins therefore contends that the search violated his rights under the Fourth Amendment, and that the evidence recovered as a result of the search should be suppressed.

"Because probable cause to search is concerned with facts relating to a presently existing condition, ... there arises the unique problem of whether the probable cause which once existed has grown stale." *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998) (internal citation and quotation marks omitted). "[W]hether information contained in an affidavit is stale 'must be determined by the circumstances of each case.'" *Id.* (quoting *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). In making this determination, we look primarily to the "inherent nature of the crime" at issue. *Id.*

As set forth above, Detective Mynatt's affidavit pointed to facts indicating that Goins's residence was being used as the base for an ongoing drug-distribution operation. The affidavit specifically described the recovery of a crack-like substance from a vehicle leaving Goins's residence, as well the controlled purchase of crack cocaine at that location on another occasion. Although Goins contends that this latter sale might have been an isolated incident, the HPD reasonably inferred otherwise in light of Goins's criminal history and the volume of visitors making brief stops at his residence. The three-day delay in executing the warrant, therefore, did not extinguish the probable cause that justified the issuance of the warrant. *Spikes,* 158 F.3d at 923 (holding that the magistrate judge had probable cause to issue a search warrant based upon information obtained more than nine days before the warrant was sought, because the information indicated that the house to be searched was the "operational base" for an ongoing drug-trafficking enterprise); *see also* Fed.R.Crim.P. 41(c) (providing that a search warrant "shall command

the officer to search, within a specific period of time *not to exceed 10 days,* the person or place named for the property or person specified") (emphasis added).

Moreover, the reason that the HPD waited three days before executing the warrant was due to a lack of resources and a concern for indirectly disclosing the identity of the confidential informant who had purchased crack cocaine at Goins's residence. This court has specifically recognized that delaying the execution of a warrant to protect the identity of a confidential informant is reasonable. *United States v. Wilson,* 491 F.2d 724, 725 (6th Cir.1974) (affirming the denial of a motion to suppress that was based upon a six-day delay between the issuance and the execution of a search warrant in order to conceal the identity of a confidential informant). We therefore conclude that the district court properly denied Goins's motion to suppress the evidence recovered from his residence.

### B. Sufficiency of the evidence

■ Goins next maintains that the government failed to present sufficient evidence to establish his guilt beyond a reasonable doubt. He therefore contends that the district court erred in denying his motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we must determine whether, after viewing the evidence in the light most favorable to the government, *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). A defendant asserting such a challenge

bears a "very heavy burden." *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986) (internal quotation marks omitted).

According to Goins, the evidence presented at trial did not show beyond a reasonable doubt that he knowingly possessed the crack cocaine recovered from his residence. He contends that the drugs belonged to Gregory Anderson, the individual who fled the house through the kitchen window at some point after the police arrived to search the premises. Goins argues that this is the only logical conclusion to be drawn from the evidence, because a rational drug dealer would not open the door for the police knowing that a bag of crack cocaine was lying on the bathroom floor.

To the contrary, we believe that a jury could infer that a rational drug dealer might intentionally leave a bag of crack cocaine near the toilet if he thought that police officers were coming to his residence only to investigate a reported music disturbance. Leaving drugs near the toilet would give the dealer at least some chance of quickly disposing of the drugs if the police, notwithstanding their purported purpose, tried to enter the premises. *Cf. United States v. Cabrera,* 116 F.3d 1243, 1246 (8th Cir.1997) (noting that the defendant flushed illegal drugs down the toilet because he "fear[ed] a drug raid" by law enforcement agents); *United States v. Wilson,* No. 96–3056, 1996 WL 494414, at *3–4 (10th Cir. Aug.27, 1996) (unpublished table decision) (upholding the unannounced execution of a search warrant because, among other reasons, the law enforcement officers had "seen instances where dealers have arranged for the rock cocaine to be kept in the bathroom so that it could be quickly flushed down the toilet in the event of a raid"). Goins had his police scanner on prior to the HPD's arrival at his house,

and thus presumably thought that the officers were simply following up on the purported music disturbance. The jury's apparent conclusion that Goins had placed the crack cocaine in the bathroom, which is located in close proximity to the front door, therefore has a logical basis.

Goins's attempt to retreat toward the bathroom when the HPD officers announced that they were executing a search warrant supports the conclusion that he knew that the drugs were there. Rather than comply with the officer's command to get on the ground, Goins assaulted the police officers who attempted to keep him from retreating. He was finally wrestled down in the doorway to the bathroom, just a few feet from the bag of crack cocaine that had been left next to the toilet.

This is not to say that the evidence of Goins's possession of the crack cocaine was overwhelming. Indeed, based upon Anderson's suspicious behavior and the lack of any apparent drug-selling proceeds in the house, a rational trier of fact might have had a reasonable doubt as to whether the crack cocaine in fact belonged to Goins. But viewing the evidence in the light most favorable to the government, as we are required to do, we believe that a rational juror could have found that it was Goins's cocaine. We therefore conclude that the district court did not err in denying Goins's motion for a judgment of acquittal.

C. Life sentence

█ Finally, Goins claims that the district court erred in sentencing him to life in prison pursuant to 21 U.S.C. § 841(b)(1)(A). This statute provides in pertinent part as follows:

> If any person commits a violation of this subparagraph ... *after two or more prior convictions for a felony drug offense have become final,* such person shall be sentenced to a *mandatory term of life*

*imprisonment* without release and fined in accordance with the preceding sentence.

(Emphasis added.)

The district court determined that the above statutory provision applied to Goins because he had been convicted of two prior drug felonies. These convictions were based upon two drug sales that occurred in 1996. On October 28, 1996, Goins sold 1.1 grams of crack cocaine to a government informant. He sold 0.6 grams of crack cocaine to the same informant on December 13, 1996. These sales formed the basis for the two charges of drug trafficking that were included in the same Tennessee indictment. Goins was convicted on both counts in 1997 and sentenced in 1998 to concurrent sentences of eight years in prison for each count, with all but six years of the sentence suspended.

Goins acknowledges that he has been convicted twice for drug felonies. He maintains, however, that the drug sales that gave rise to these convictions were part of the same criminal episode, and therefore should have been combined for the purpose of determining the applicability of § 841(b)(1)(A).

To trigger a sentencing enhancement under the above section, a defendant's prior felony convictions must involve separate criminal episodes. *United States v. Hughes,* 924 F.2d 1354, 1361 (6th Cir.1991) (adopting the "multiple criminal episodes standard" for the application of § 841(b)(1)(A)). Offenses are considered distinct criminal episodes if they "occurred on occasions different from one another . . . ." *United States v. Roach,* 958 F.2d 679, 684 (6th Cir.1992).

In the present case, Goins had two prior felony convictions for drug sales that clearly occurred on different occasions. The sales took place on separate dates that

were more than six weeks apart. This substantial gap between the sales readily distinguishes the present case from *United States v. Blackwood*, 913 F.2d 139 (4th Cir.1990), a decision upon which Goins relies. In *Blackwood*, the Fourth Circuit concluded that the defendant's two convictions for marijuana possession were part of the same criminal episode where one conviction was based upon marijuana recovered from his vehicle during a traffic stop and the other conviction arose from an additional amount of marijuana found in the defendant's hotel room two hours later. *Id.* at 144–47. The drug sales that gave rise to Goins's prior convictions, in contrast, did not even occur in the same month, much less within two hours of each other. His reliance upon *Blackwood* is therefore misplaced.

■ Goins's alternative argument that the drug sales were part of a single criminal episode because they both involved the same government informant is similarly without merit. In *Roach*, this court concluded that two drug sales made to the same undercover agent over a period of 15 days did not constitute a single criminal episode, and therefore upheld the enhancement of the defendant's sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), a statute that is substantially similar to 21 U.S.C. § 841(b)(1)(A). *Roach*, 958 F.2d at 683–84. We find *Roach* persuasive in determining that Goins's prior drug sales were not part of the same criminal episode.

■ Finally, Goins contends that his two prior convictions should have been considered a single criminal episode because he was convicted on both counts on the same day. He relies upon 18 U.S.C. § 3559(c)(1), a statute that provides for a mandatory life sentence if a defendant is convicted of a serious violent felony after having been previously convicted of two or more serious violent felonies or serious drug offenses. This statute specifically states that to serve as a basis for the mandatory life sentence, "each serious violent felony or serious drug offense . . . , other than the first, [must be] committed after the defendant's conviction of the preceding serious violent felony or serious drug offense." Section 841(b)(1)(A), however, contains no similar language.

Moreover, with its enactment of § 3559(c)(1), Congress demonstrated that it is quite capable of explicitly providing in the statutory text the specific requirements as to what constitutes a predicate offense for the purpose of a sentencing enhancement. We thus find no basis for importing the requirements of § 3559(c)(1) into § 841(b)(1)(A). *See Bejjani v. I.N.S.*, 271 F.3d 670, 685 (6th Cir.2001) ("Courts may use negative inference, which is a rule of statutory construction, to discern congressional intent."). Based upon the above analysis, we find no error in the district court's decision to sentence Goins to life in prison pursuant to § 841(b)(1)(A).

## III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.