**UNITED STATES of America,**

v.

**Todd Duval DAVIS, Jr., Defendant.**

**No. CR. 4:02cr104.**

United States District Court,
E.D. Virginia,
Newport News Division.

Aug. 7, 2003.

Timothy R. Murphy, Special Assistant United States Attorney, Norfolk, VA, Counsel for USA.

Larry M. Dash, Assistant Federal Public Defender, Norfolk, VA, Counsel for Defendant.

### OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant Todd Duval Davis, Jr.'s ("Davis") motion to suppress evidence seized subsequent to the execution of search warrants on March 19, 2001. For the reasons stated below, the motion to suppress is **DENIED.**

### Procedural History

On September 4, 2002, a one-count indictment was filed against defendant, alleging possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), and 18 U.S.C. § 2. Defendant filed the instant motion to suppress on March 31, 2003. On May 16, 2003, this court held a hearing on the motion, allowing the parties to follow-up the hearing by briefing issues raised. Both parties have so responded. This matter is therefore ripe for review.

### Factual History

On March 9, 2001, Newport News police detective R.S. Ronneberg ("Detective Ronneberg") obtained state search warrants for an apartment located at 108 Tyler Avenue, Apartment 1A, Newport News, Virginia, and for a black male, described as 22 to 25 years old, 5' 7" to 5' 8"

tall, 165 to 170 pounds, with a light-skinned complexion. Both warrants were supported by a single affidavit which stated that a reliable informant had been to Apartment 1A at 108 Tyler Avenue within the forty-eight hours preceding the application for the warrants, and that the informant had seen cocaine being offered for sale by the individual described above. The informant had seen that individual engage in hand-to-hand sales, and had observed cocaine and marijuana present at the apartment when he left. The affidavit also described the reliability of the informant, stating that the informant had been used previously by the detective in controlled purchases of narcotics, and that information provided by the informant had resulted in arrests and convictions. The warrants issued on the evening of March 9, 2001, and Newport News detectives conducted surveillance of the apartment on a number of days following issuance of the warrants. Surveillance on March 12 through March 16, 2001, revealed no lights on at the apartment, and no discernable activity, so the detectives did not execute the warrants at that time. On March 19, 2001, ten days after the warrants were issued, detectives observed lights in the apartment and executed the warrants.

As detectives began to search the premises, an individual, later determined to be Davis, defendant herein, approached the front door with a bag of groceries. A detective opened the door to find defendant standing there with a key, which was subsequently determined to open the door to the apartment. Defendant matched the description of the suspect in the warrant, and he was read his Miranda rights and searched pursuant to the search warrant. The search of defendant's person turned up seven baggies of crack cocaine, a small bag of marijuana, $140 cash, a pager, and a cell phone. The search of the apartment yielded, among other items, crack cocaine, powder cocaine, marijuana, and a digital scale with cocaine residue.

### Analysis

Defendant argues that the evidence seized pursuant to a search of his person and the residence on March 19, 2001, should be suppressed because the search was conducted based on invalid warrants. He offers three arguments as to why the warrants were invalid: (1) the warrant for the black male failed to specify with particularity the "location," i.e. the person, to be searched; (2) the supporting affidavit was insufficient to establish probable cause, as the information received by the detective giving the affidavit was stale, not reliable, and not precise; and (3) the warrants were invalid at the time they were executed because they were stale, and probable cause no longer existed. Additionally, at the hearing, an issue arose regarding the time of execution of the warrants, and whether Rule 41(h) of the Federal Rules of Criminal Procedure regarding service at night applied to state warrants in a case later referred for federal prosecution.

### 1. Validity of Warrant—Stating with Particularity the Person to be Searched

■ Defendant first argues that the warrant for the search of "A Black Male Described as 22—25 Yrs. old, 5' 7"—5' 8", 165—175 lbs., Light Skinned" fails to meet the particularity requirement of the Fourth Amendment. Defendant argues that, as there is no name or other identifying information, the warrant is ambiguous because it could allow for the search of multiple individuals in a city where a significant percentage of the population is black.

■ The Fourth Circuit has recognized the standard set forth by the Supreme Court in determining whether a warrant

meets the particularity requirement: a warrant meets the requirement " 'if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place [or person] intended.' " *United States v. Owens,* 848 F.2d 462, 463 (4th Cir.1988) (quoting *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925)). In the matter at issue, the warrant gave a physical description, and it was issued in conjunction with the warrant for the residence. Both warrants were based on the same affidavit, which linked the defendant to the residence. Finally, the defendant was located and searched as he attempted to enter the residence with a key. Detective Ronneberg testified that it was his intent to execute the warrant for the black male only in conjunction with the search of the apartment. The court finds that the warrant for the black male, in conjunction with the underlying affidavit and the warrant for the search of the apartment, meets the particularity requirement set out by the Fourth Circuit, as an officer could, with reasonable effort, determine that the intent was to search an individual, matching the description given, who was found in the vicinity of Apartment 1A.

### 2. Validity of Warrants—Supporting Affidavit Based on Stale, Imprecise, and Unreliable Information

■ Defendant next argues that the two warrants were improperly obtained as the information received by the detective, which formed the basis for the affidavit supporting the warrants, was stale, imprecise, and unreliable. He argues that there was insufficient evidence provided to the magistrate to form a substantial basis for determining probable cause. Defendant asserts that the information provided gave no specifics as to the amount of cocaine that was seen being purchased or the amount that remained when the informant left, and there was no specific time frame

given as to when the informant had been in the residence. The defendant also asserts that the informant was in the residence on only one occasion. Finally, the defendant argues that there are no specifics given to allow the magistrate to determine the reliability of the informant.

The government asserts that the totality of the circumstances provided ample facts and circumstances to have allowed the magistrate to determine that probable cause existed. The informant identified the apartment and described an individual whom he witnessed selling cocaine in the apartment. The informant also indicated that there was marijuana at the residence and that cocaine and marijuana remained at the residence when he departed. The activity had occurred, according to the informant, within the past forty-eight hours. Finally, the affidavit did provide information on the reliability of the informant, including statements that the informant had been used in the past by Detective Ronneberg to make controlled purchases, that information he had given had led to the arrest and conviction of individuals for narcotics violations and to the recovery of narcotics, and that the informant was familiar with the packaging and sales of drugs in the Newport News area.

■ The Fourth Circuit has stated that once a search warrant has been issued, the magistrate's probable cause determination is to be shown "great deference." *United States v. Blackwood,* 913 F.2d 139, 142 (4th Cir.1990). The reviewing court simply determines whether the magistrate had a "substantial basis" for the finding of probable cause, based on the information presented to him. *Id.* Furthermore, the Fourth Circuit has cautioned that reviewing courts should interpret affidavits in a common sense, rather than in a hypertechnical, manner. *Id.*

Therefore, under the analysis as set out by the Fourth Circuit, and given the deference shown to probable cause decisions of the magistrate, the government's assessment is correct. The affidavit, based on information from a reliable informant, described a specific location and provided information regarding the presence of drugs and of an individual selling drugs within the forty-eight hours prior to issuance of the warrants; therefore, it did provide a sufficient basis for the magistrate's determination of probable cause.

### 3. Validity of Warrants—Stale at the Time of Execution

█ Defendant's final argument is that by the time Detective Ronneberg executed the warrants, they were stale and probable cause no longer existed. He argues that the lapse of ten days, combined with the detective's failed attempts to observe any signs of activity at the residence, further weakens any probable cause that existed at the time the warrants issued. The defendant contends that under the totality of the circumstances, a reasonable officer would not have waited ten days after obtaining the warrants to execute them.

The government counters that under Rule 41(e)(2)(A) of the Federal Rules of Criminal Procedure, a federal warrant must be executed "within a specified time no longer than ten days." The Code of Virginia, § 19.2–56, provides that a state search warrant must be executed within fifteen days. The government argues that the ongoing nature of drug distribution generally suggests that distribution, especially at residential locations as opposed to motel rooms and vehicles, is likely to continue barring disruption by law enforcement. Furthermore, the detective had no information that the residents had moved their operation or abandoned the premises.

█ As the Fourth Circuit has explained, "[T]ime is a crucial element of probable cause." *United States v. McCall,* 740 F.2d 1331, 1335 (4th Cir.1984). "A valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *Id.* at 1335–36 (citation omitted). Even if probable cause exists at the time the warrant is issued, "the passage of time may (without additional newer facts confirming the location of the evidence sought) render the original information insufficient to establish probable cause at [a] later time." *United States v. Freeman,* 685 F.2d 942, 951 (5th Cir.1982). However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *McCall,* 740 F.2d at 1336. Rather, the court must determine whether there was probable cause to believe, at the time the search was actually conducted, that evidence of criminal activity was located at the premises searched by analyzing factors such as the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. *Id.*

In the matter before the court, the warrants were properly issued upon a finding of probable cause. The detective then began surveillance of the apartment in an attempt to execute the warrants at a time when there was ongoing activity. The warrants were obtained on March 9, 2001, which was a Friday. Detective Ronneberg testified that, as there were other warrants that had to be executed that night, he did not act upon the warrants in the instant case immediately, though he did drive by the residence to see if there was any indication that someone might be inside. Detective Ronneberg was not on duty the weekend of March 10 and 11. The following Monday, March 12, 2001, the detective set up surveillance at the apartment indicated in the warrant, looking for

any lights or signs of activity. The surveillance lasted fifteen to thirty minutes. He followed the same procedure on Tuesday, Wednesday, Thursday, and Friday of that week, selecting different times of the day, in an attempt to serve the warrants when there was activity in the apartment. The detective testified that he did not work the weekend, but the following Monday, March 19, 2001, he observed lights in the apartment and executed the warrants at that time.

The ten-day time limit in Federal Rule of Criminal Procedure 41(e)(2)(A) is an outer limit, as is the fifteen-day limit set out in the Code of Virginia, § 19.2–56. However, the fact that the rules set out such limits indicates that they do contemplate some delay. Moreover, Detective Ronneberg was diligent in pursuing the warrants, observing the apartment on each subsequent day that he was on duty. Finally, the detective served the warrants within ten days, which is the more restrictive period under the federal rules,[1] and he did so on the first occasion that he spotted activity in the apartment. Though the Fourth Circuit has not addressed this situation, the Sixth Circuit has stated that the better reasoned rule allows for some delay in execution of a warrant "where the cause or causes of the delay could appropriately be held to be 'reasonable.'" *United States v. Wilson*, 491 F.2d 724, 725 (6th Cir.1974) (citation omitted). The court finds the delay to be reasonable, as Detective Ronneberg was diligent in his attempts to execute the warrants, delaying only in order to execute them when there was ongoing activity in the apartment. Furthermore, the detective testified that, in his experience, drug distribution operations

run out of a private residence, such as that in the instant case, tend to remain underway until interrupted by law enforcement, whereas operations out of motel rooms or vehicles tend to be more transient. Therefore, in Detective Ronneberg's experience, there was not an imminent threat that the activity would change locations.

Because the delay was reasonable, and the service of the warrants was within the outer limits as set forth in the Federal Rules of Criminal Procedure and also within those of the Code of Virginia, § 19.2–56,[2] the probable cause present at the issuance of the warrants still existed at the time of execution, and the warrants were not stale.

### 4. Validity of Warrants—Service at Night

During the hearing held before this court on May 16, 2003, an issue arose as to whether service of the warrants was procedurally proper. The warrants were executed at 10:42 p.m. Under Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, warrants must be executed in the daytime unless otherwise specifically authorized.[3] However, the warrants in question were state warrants, obtained and executed without any federal involvement. Therefore, precedent dictates that, as the warrants were not obtained "at the direction or urging of a federal officer," the federal rules do not apply. *See United States v. Williams*, 977 F.2d 866, 870 (4th Cir.1992) (quoting *United States v. Smith*, 914 F.2d 565, 569 (4th Cir.1990)). In their briefs submitted subsequent to the hearing, both parties were in agreement on this matter.

---

1. The court notes that the longer fifteen-day limit under the state rules would likely apply, were there an issue of service outside the time limit. *See* discussion of *United States v. Williams*, 977 F.2d 866 (4th Cir.1992), *infra* at Analysis, Section 4.

2. *See supra* note 1.

3. Daytime is defined as "the hours between 6:00 a.m. and 10:00 p.m. according to local time." Fed.R.Crim.P. 41(a)(2)(B).

### *Conclusion*

For the reasons stated above, the motion to suppress the evidence seized subsequent to the March 19, 2001, search of defendant and the residence is **DENIED.** The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to counsel for both parties.

**IT IS SO ORDERED.**