**UNITED STATES of America**

v.

**Franklin Keith SELBY Defendant.**

**No. CR. JFM–03–0372.**

United States District Court,
D. Maryland.

Aug. 3, 2004.

Debra Lynn Dwyer, Office of the United States Attorney, Thomas M. DiBiagio, Baltimore, MD, for Plaintiff.

Jeffrey E. Risberg, Office of the Federal Public Defender, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

GAUVEY, United States Magistrate Judge.

#### I. Background

Franklin Keith Selby was indicted for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), and the Government moved for his pretrial detention on the grounds of dangerousness under 18 U.S.C. § 3142(f)(1) and risk of flight under 18 U.S.C. 3142(f)(2)(A). The defendant challenged the Government's motion for detention based on dangerousness, arguing that he had not previously been convicted of two or more offenses as defined by 18 U.S.C. § 3142(f)(1)(A)-(C) and that the charge he faced was not "a crime of violence;" therefore, the Government was not entitled to move for detention on that ground. The Government did not contest that the charge was not considered a crime of violence in this district, but asserted that Mr. Selby's prior 1995 conviction in state court for rape and robbery served as two or more offenses under § 3142(f)(1)(A)-(C). It was agreed that the convictions for these charges arose from the same criminal episode and were charged in the same indictment, but the parties disagreed as to whether these con-

victions should be considered two separate offenses for purposes of § 3142(f)(1)(D). The Court proceeded with the detention hearing, but reserved judgment on the issue and requested briefing on whether the conviction on multiple counts of violent crimes stemming from the same criminal episode results in "two or more offenses" under section (f)(1)(D) of the Bail Reform Act.

Having considered the parties' submissions and arguments, the Court ruled from the bench that the Government did not have grounds to move for pretrial detention under 18 U.S.C. § 3142(f)(1)(D), and that there was no serious risk of flight under 18 U.S.C. § 3142(f)(2)(A), and released the defendant on certain conditions. This opinion memorializes and supplements that bench ruling denying consideration of dangerousness as a basis for defendant's pretrial detention based on his criminal history.

## II. *Discussion*

### A. Detention Under the 1984 Bail Reform Act

The Bail Reform Act of 1984 ("the Act"), 18 U.S.C. §§ 3141 *et seq.*, authorizes a court to order a defendant's detention pending trial in certain circumstances if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e).

■ The Government may move for pretrial detention under § 3142(e) if at least one of the six categories listed in § 3142(f) is met. *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir.1992). In the instant case, the Government moved for detention under 18 U.S.C. § 3142(f)(1)(D),[1] arguing that Mr. Selby had previously been convicted of two crimes of violence in a Maryland state court.[2] Specifically, the Government argued that Mr. Selby's January 17, 1995 convictions for (1) First Degree Rape and (2) Robbery with a Dangerous and Deadly Weapon, constitute the requisite convictions of "two or more offenses" under 18 U.S.C. § 3142(f)(1)(D). Objecting, the defendant asserted that 18 U.S.C. § 3142(f)(1)(D) requires that the predicate convictions stem from separate criminal episodes, and since Mr. Selby's prior convictions for the rape and robbery arose from the same criminal episode and were charged in the same indictment, they should be considered only one offense under the Bail Reform Act. The Government countered that the statute should be interpreted literally as simply requiring convictions for two offenses, regardless of whether they resulted from one criminal episode, and that Mr. Selby's convictions should be

1. 18 U.S.C. § 3142(f)(1)(D) provides that a judicial officer shall hold a detention hearing in a case that involves:

any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses.

2. Sub-section (D) of 18 U.S.C. § 3142 allows the Government to move for detention in a case that involves "a felony if such person has been convicted of . . . two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph . . . ." Paragraphs (A) through (C) of 18 U.S.C. § 3142 provide: "(A) a crime of violence; (B) an offense for which the maximum sentence is life imprisonment or death; (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . ., the Controlled Substances Import and Export Act . . ., or the Maritime Drug Law Enforcement Act."

counted as two separate crimes with separate penalties, qualifying as the two predicate convictions for 18 U.S.C. § 3142(f)(1)(D).

Consequently, in deciding whether to grant the Government's motion for a detention hearing on dangerousness grounds, the Court must determine whether "convicted of two or more offenses" should be construed literally to mean any two convictions, regardless of whether they were committed simultaneously, or nearly simultaneously, during a single criminal episode; or whether that language should be construed to mean the number of times a defendant engaged in a course of criminal conduct for which he was convicted.

While the Court acknowledges the superficial appeal of the literal interpretation that the Government advances, the Court has concluded that such an interpretation contravenes legislative intent and the body of federal case law construing similar language in related criminal statutes.

### B. Statutory Interpretation

■ This issue before the Court is one of statutory interpretation. Accordingly, the Court commences by applying the cardinal rule that a court must first examine the plain language of the statute itself. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (stating that "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" judicial inquiry ends) (internal citations omitted); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (holding that the plain meaning rule requires "that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms"). If the "statutory language is

plain and admits of not more than one meaning, the duty of interpretation does not arise." *Caminetti*, 242 U.S. at 485, 37 S.Ct. 192. Nonetheless, if after considering the language, the court finds it to be unclear and ambiguous, then the court is permitted to inquire into the statute's legislative history in order to effect the intent of the legislature. *See Robinson*, 519 U.S. at 340–42, 117 S.Ct. 843. Moreover, there are acknowledged "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ..." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), so that the plain meaning of the statutory text is inconclusive. Ultimately the goal of the Court is to discern and "always give effect to the intent of the legislature." *Robinson*, 519 U.S. at 341, 117 S.Ct. 843 (1997).

■ With these guidelines in mind, the Court turns to the contested phrase, "convicted of two or more offenses." When determining the existence of ambiguity, the court is guided "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Jennings*, 323 F.3d 263, 266–67 (4th Cir.2003) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808, (1997)). Generally, a court may find that "[a]mbiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." *United States v. Iron Mountain Mines*, Inc. 812 F.Supp. 1528, 1557 (E.D.Cal.1992) (citing 2A SUTHERLAND, STATUTORY CONSTRUCTION §§ 45.02 at 5 (5th ed.1992)).

■ At first glance, the term "convicted of two or more offenses" appears clear and unambiguous. As the Government posits, this phrase could be interpreted to mean

that a defendant need only have been charged and convicted of violating two separate statutes, regardless of whether the underlying criminal acts resulted out of more than one criminal episode, were distinct in time, or unrelated. Such a reading presents a very literal interpretation based on the plain language; however, specific statutory language cannot be read in a vacuum, but rather, must be read in the broader context of the statute and the embodying law itself. *Robinson,* 519 U.S. at 341, 117 S.Ct. 843. Although the Government's interpretation is logical, a second and equally plausible interpretation exists. When interpreting the statute in the broader context of the criminal law as discussed below, one conversant with criminal law could understand the requirement of "convicted of two or more offenses" to mean that the prior two convictions must have resulted from two separate criminal episodes, in order to count as predicate convictions. *See infra* Part II.C. Based upon these two plausible interpretations, the Court finds "convicted of two or more offenses" ambiguous. Consequently, the Court is entitled to go beyond the statute's plain language to interpret its intended meaning. *Robinson,* 519 U.S. at 340–42, 117 S.Ct. 843.

Alternatively, as discussed below, the literal application of the statute would do violence to the intentions of its drafters, allowing further examination of all sources of legislative intent to effect the intent of Congress. *Griffin v. Oceanic Contractors, Inc., supra.*

■■■ Interpretation of any provision of the Bail Reform Act must necessarily be informed by the radical and controversial change that the act wrought. Prior to 1984, judges could detain only those defendants considered likely to flee before trial or those defendants who threatened to harm, or did harm witnesses, jurors or other participants in the judicial process. The drafters recognized that "a pretrial detention statute may ... be constitutionally defective if it ... does not limit[ ] pretrial detention to cases where it is necessary to serve the societal interests it is designed to protect." [S. Report 98–225, 8]. While the Supreme Court ultimately approved pretrial detention based on dangerousness in *U.S. v. Salerno,*[3] the Court was clear that the Act is preventative, rather than punitive, in nature. 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Accordingly, the Supreme Court has stated that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755, 107 S.Ct. 2095.

■■■ The Bail Reform Act's legislative history, although not explicit, generally supports the defense's position that the statute is meant to be read as requiring that the predicate convictions arise from separate criminal episodes.[4] In passing

---

3. The defendants in *Salerno* were subject to detention based on the nature of their charges, not their past criminal history.

4. Although neither the statute's plain language nor legislative history explicitly defines "two or more offenses," and although the Court has found the language ambiguous, the Court does not find it to contain a "grievous ambiguity or uncertainty" so as to invoke the rule of lenity. *United States v. Kahoe, III,* 134 F.3d 1230, 1234 (4th Cir.1998) (quoting *Chapman v. United States,* 500 U.S. 453, 463, 111

S.Ct. 1919, 114 L.Ed.2d 524 (1991)). The rule of lenity generally calls for courts to construe ambiguous criminal statutes against the government and in favor of the defendant. *United States v. Hall,* 972 F.2d 67, 69 (4th Cir.1992). However, the rule is one of last resort, only to be employed if after the "court has seize[d] everything from which aid can be derived, it is still left with an ambiguous statute." *Chapman,* 500 U.S. at 463, 111 S.Ct. 1919. Thus, the rule should only be used if ambiguity remains even after a court has

the 1984 Act, Congress sought to reform the deficiencies of the 1966 Bail Reform Act, by addressing "the alarming problem of crimes committed by persons on release and ... giv[ing] the court adequate authority to make release decisions that give appropriate recognition of the danger a person may pose to others if released." S. REP. No. 98–147, at 1–2 (1983). The problem of recidivism was a major motivating factor inspiring the passage of the Bail Reform Act of 1984. *See,* S. REP. No. 97–317, at 36–38 (1981) (discussing the need to provide the courts with authority to be able to "deal with dangerous defendants seeking release" in an effort to help "reduce the rate of pretrial recidivism").

Specifically, section (f)(1)(D) was enacted to advance the Bail Reform Act's general purpose of "address[ing] the alarming problem of crimes committed by person on release" by allowing the courts to detain individuals based upon predictions of future dangerousness. S.Rep. No. 98–225, at 21 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3188–90. The 1984 Senate Report conducting a section-by-section analysis of the Bail Reform Act explains that under § 3142(f)(1), a "detention hearing may ... be sought when a defendant charged with a serious offense has a *substantial history* of committing dangerous offenses." S.Rep. No. 98–225, at 21 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3204 (emphasis added). Providing an example of an offender with a *substantial history* of committing dangerous of-

fenses, the report states that section (f)(1)(D) specifies that this type of an offender is one who is charged with a felony and has previously been convicted of two or more offenses. *Id.* The report continued that "this sort of criminal history, [described in (f)(1)(D) ], is strongly indicative of a defendant's dangerousness, and thus is an adequate basis for convening a pretrial detention hearing." *Id.* Other legislative history describes those defendants subject to detention under section (f) as those with a "long record of felonies." S. REP. No. 97–317, at 43 (1982). Although the legislative history is silent on whether multiple convictions stemming from one single criminal episode counts separately toward the predicate "two or more offenses;" the Court finds that the references to section (f)(1)(D) as addressing recidivists,[5] and those with substantial criminal histories or a long record of felonies, indicative that Congress intended (f)(1)(D) to mean that the "two or more offenses" must have been committed on separate occasions.

Moreover, other Courts that have discussed § 3142(f)(1)(D), although none have defined what is meant by "two or more offenses," have characterized it as a recidivist provision. In *United States v. Silva,* the Government moved for detention under (f)(1)(D), and in a matter of first impression, held that the government may not rely upon a defendant's juvenile criminal record "to invoke the *criminal recidi-*

---

looked to "the language and structure, legislative history and motivating policies" of the statute. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Accordingly, because this Court is able to derive the statutory intent, the Court finds resort to the rule of lenity unnecessary. If after exhaustive analysis there was still grievous ambiguity or uncertainty of meaning, the rule of lenity would have applied,

resulting in the same interpretation favorable to the defendant.

**5.** A recidivist, as defined by Black's Law Dictionary, is a "habitual criminal; a criminal repeater." By this very definition, a statute meant to address recidivists, is addressing a category of offenders who are criminal repeaters-meaning that they've been convicted of at least one offense and subsequently committed a second offense.

*vism* provision set forth in section 3142(f)(1)(D) ...." 133 F.Supp.2d 104, 106 (D.Mass.2001) (emphasis added); *see also, United States v. Powell,* 813 F.Supp. 903, 905 (D.Mass.1992) (categorizing § 3142(f)(1)(D) as the "recidivist offenders" section). Furthermore, in the seminal opinion of *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which upheld the constitutionality of the 1984 Bail Reform Act, the Supreme Court noted that the Act, through 18 U.S.C. § 3142(f)(1)(D), "carefully limits the circumstances under which detention may be sought," amongst other circumstances, for "certain repeat offenders." The opinion concludes that: "In our society, liberty is the norm, and detention prior to trial ... is the carefully limited exception." *Salerno,* 481 U.S. at 755, 107 S.Ct. 2095. Accordingly, based upon the statute's legislative history and judicial interpretation, it is clear that 18 U.S.C. § 3142(f)(1)(D) was meant to be interpreted as a recidivist provision applicable to repeat offenders.

### C. Other Federal Recidivism Statutes

Convinced that both the legislative history and case law brand 18 U.S.C. § 3142(f)(1)(D) a recidivism provision, and since no cases instruct on how to count convictions under § 3142(f)(1)(D), the Court turns to the judicial analysis of similar language in other criminal recidivism statutes for guidance. *See United States v. Petty,* 798 F.2d 1157 (8th Cir.1986), *vacated by,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987) ("*Petty I*") and *United States v. Petty,* 828 F.2d 2 (8th Cir.1987) ("*Petty II*") (interpreting "three previous convictions" in the sentencing enhancement provision of 18 U.S.C. § 1202(a), predecessor statute to 18 U.S.C. § 924(e)); *United States v. Blackwood,* 913 F.2d 139 (4th Cir.1990) (interpreting the meaning of "two or more prior convictions" in the sentencing enhancement statute, 21 U.S.C. § 841(b)(1)(A)(iii)).

### 1. *Judicial Interpretation of "three previous convictions" Under 18 U.S.C. § 924(e) of the Armed Career Criminal Act.*

As the statute currently reads, 18 U.S.C. § 924(e) of the Armed Career Criminal Act, enhances a defendant's sentence where he has "three previous convictions ... committed on occasions different from one another ...." When 18 U.S.C. § 924(e) was first enacted, as 18 U.S.C.App. § 1202(a), however, the statute only required that a defendant have "three previous convictions," like 18 U.S.C. § 3142(f)(1)(D), but did not include the qualifying language that the convictions must be "committed on occasions different from one another." The issue of whether the "three previous convictions" under 18 U.S.C.App. § 1202(a) were required to stem from separate occurrences, was first addressed by the Eighth Circuit in *United States v. Petty,* 798 F.2d 1157 (8th Cir. 1986) ("*Petty I*"). In *Petty I,* the issue was whether a defendant had the qualifying "three prior convictions" where his criminal record reflected that he had a six-count conviction for six armed robberies that all occurred simultaneously (or nearly simultaneously) during one criminal episode (he robbed six customers in a single holdup in a restaurant). The Eighth Circuit ultimately decided that the language "three prior convictions" did not require that the convictions have occurred on separate occasions, finding the defendant's six-count conviction resulting from one criminal episode sufficient to establish the three predicate convictions requirement of § 1202(a)(1) for enhanced punishment.

Approximately one year after issuing its opinion in *Petty I,* the Eighth Circuit va-

cated its *Petty I* decision, finding that it had erred in defining "three previous convictions." *See United States v. Petty*, 828 F.2d 2 (8th Cir.1987) ("*Petty II*"). Originally, the Government had argued in *Petty I* that because 18 U.S.C.App. § 1202(a) lacked descriptive language found in similar federal statutes [that offenses must be committed on occasions different from one another] Congress intended not to require that these "three previous convictions" have been committed on occasions separate from one another. *Petty II*, 828 F.2d at 2. However, in a rare occasion the Solicitor General on petition to the United States Supreme Court from the *Petty I* decision, confessed his error in the *Petty I* argument and submitted that although the statute lacked descriptive language that offenses must be committed on occasions different from one another, the legislative history "strongly supports the conclusion that the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions resulting out of a single criminal episode." *Petty II*, 828 F.2d at 2. Based upon the Solicitor General's argument, the Supreme Court reversed and remanded the *Petty I* decision directing the Eighth Circuit to reconsider its decision in light of the Solicitor General's views. *Petty v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987). On reconsideration, the Eighth Circuit agreed with the Solicitor General and remanded the case to the district court with instructions to consider the prior convictions as a single conviction under § 1202(a). *Petty II* at 2.

Following the *Petty* decision, every circuit to consider this issue, which included the First, Second, and Eleventh Circuit, all agreed with the Solicitor General's position and the decision in *Petty II*. *See United States v. Towne*, 870 F.2d 880, 889 (2d Cir.1989); *United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.1988); *United States*

*v. Greene*, 810 F.2d 999, 1000 (11th Cir. 1986). In a final affirmation of the Solicitor General's position, in 1988 Congress amended the Armed Career Criminal Act and inserted into § 924(e) language requiring that the "three previous convictions" be "committed on occasions different from one another." The statute's legislative history illustrates that this amendment was meant to clarify the statute "to reflect the Solicitor General's construction and to bring the statute in conformity with the other enhanced penalty provisions . . . ." 134 Cong. Rec. S17360, § 7056 (daily ed. Nov. 10, 1988) (citing 18 U.S.C. § 3575(e)(1); 21 U.S.C. § 849(e)(1)). Senator Biden further explained that under this amendment

> a single multi-count conviction could still qualify where the counts related to crimes committed on different occasions, but a robbery of multiple victims simultaneously (as in Petty) would count as only one conviction. This interpretation plainly expresses that concept of what is meant by a "career criminal", that is, a person who over the course of time commits three or more of the enumerated kinds of felonies and is convicted therefore.

*Id.*

### 2. Judicial Interpretation of "two or more prior convictions" Under 21 U.S.C. § 841(b)(1)(A) of the Anti–Drug Abuse Act.

In 1990, the Fourth Circuit in *United States v. Blackwood*, was faced with a similar question of statutory interpretation: whether the language "two or more prior convictions" in 21 U.S.C. § 841(b)(1)(A), a sentencing enhancement provision in the Anti–Drug Abuse Act, required the predicate convictions to have been committed on occasions different from one another. 913 F.2d 139 (4th Cir.1990). Section

841(b)(1)(A) mandates a sentence of life imprisonment without release where a defendant has "two or more prior convictions for a felony drug offense;" however, Congress did not include language requiring these convictions to have occurred on occasions different from one another. Moreover, the legislative history is silent as to whether multiple convictions stemming from one criminal episode may be counted as the two predicate convictions.

The defendant in *Blackwood* was convicted for possession with intent to distribute over 188 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). *Blackwood*, 913 at 140. On July 10, 1989, the district court held a sentencing hearing, where it determined that Mr. Blackwood's record contained two prior convictions, and sentenced him to mandatory life imprisonment without parole under 21 U.S.C. § 841(b)(1)(A)(iii). *Id.* at 144. Mr. Blackwood had been arrested in 1981 for possession of marijuana that was found in his truck, and then two hours later, after obtaining a search warrant, the police also arrested him for marijuana found in his hotel room. *Id.* at 144–45. The grand jury returned two separate indictments, one for the marijuana in the truck and one for that in the hotel room; the two cases were assigned separate criminal docket numbers but were consolidated for trial. *Id.* at 145. Mr. Blackwood was convicted of both possession charges. *Id.* Mr. Blackwood appealed this sentence arguing, *inter alia*, that his previous convictions were "no more than two components of a single act of criminality ..." and the court "should construe them as a single conviction for purposes of sentencing under § 841(b)(1)(A)(iii)." *Id.* at 145.

On appeal, the Government argued that the plain meaning of § 841(b)(1)(A) "requires that the two convictions be counted separately for enhancement purposes, re-gardless of the fact that the state courts expressly viewed them as a part of a single transaction." *Id.* at 145. The Fourth Circuit acknowledged the superficial appeal of the plain meaning argument, but ultimately found that such an interpretation "contradicts a unanimous body of federal case law construing the apparently plain language of a nearly identical federal sentencing enhancement statute." *Id.* at 145–146. Moreover, in rejecting the Government's argument, the appellate court found that Congress has indicated that the terms "prior" or "previous convictions" mean "separate criminal episodes" when used for sentencing enhancement purposes. *Id.*

The *Blackwood* court acknowledged that although the statute's legislative history was silent as to this issue, it nonetheless inferred that Congress intended that the predicate convictions under § 841(b)(1)(A) have occurred on occasions distinct in time. 931 F.2d at 147. The court noted that when Congress enacted the Anti–Drug Abuse Act of 1988, in the same public law, Publ. L. No.100–690, Congress amended 18 U.S.C. § 924(e) to clarify the substantive meaning of "previous convictions" and inserted the language "committed on occasions different from one another." *Blackwood*, 913 F.2d at 146. Although Congress did not include this same language in § 841(b)(1)(A), importantly, the Fourth Circuit inferred that when drafting the statute, "Congress simply did not advert to the possibility that a court might again founder in the same type of confusion and 'error' that the Eighth Circuit committed in *Petty I*—and that Congress subsequently condemned." *Id.* at 147. In so doing, the Court concluded that despite the seemingly plain language in § 841(b)(1)(A), it is no more plain than the language in § 924(e) before its clarifying amendment and that to read the statute as to allow convictions stemming from one criminal episode to be counted separately would

"thwart the clear legislative goals." *Id.* Accordingly, the Court "decline[d] to lapse into analogous error and initiate a process of judicial and legislative tinkering similar to that which followed *Petty I* ", and held that the predicate "two or more prior convictions" must have occurred on occasions "distinct in time." *Id.*[6]

Neither the Fourth Circuit in *Blackwood* nor the Eighth Circuit in *Petty* (or indeed any of the appellate courts which subsequently interpreted these statutes) discussed the various Supreme Court decisions on statutory interpretation to justify going beyond the plain statutory language. But all did go beyond the plain literal language, concluding that their interpretation faithfully implemented legislative intent. This Court concludes that those cases and this one are the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters and those intentions must be controlling." *Griffin,* 458 U.S. at 571, 102 S.Ct. 3245.

### 3. *Consideration of Prior, Multiple Convictions in the Sentencing Guidelines*

The Career Offender provision of the United States Sentencing Guidelines, U.S.S.G. § 4B1.1, also supports the concept that predicate convictions for purposes of criminal recidivism statutes, must have occurred on occasions separate from one another. In 1984, as part of the Sentencing Reform Act, Congress enacted 28 U.S.C. § 994(h), which in setting out the duties of the Sentencing Commission, mandated that the Commission assure that "the guidelines specify a sentence to a term of imprisonment at or near the maxi-mum term authorized for categories of defendants in which the defendant ... has *previously been convicted of two or more prior felonies ....*" (emphasis added). In accordance with this mandate, in 1987, the United States Sentencing Commission enacted the first Sentencing Guidelines Manual, including sentencing enhancement provision U.S.S.G. § 4B1.1. The Background Notes following § 4B1.1 explain that this provision implements Congress's directive in 28 U.S.C. § 994(h) that the Commission assure that certain "career" offenders receive a sentence at or near the maximum term authorized. The language of § 4B1.1 provides that a defendant is a career offender and subject to enhanced sentencing when, among other criteria, "the defendant has at least two prior felony convictions ...."

On the face of § 4B1.1, the Sentencing Commission seems to precisely track the language of § 994(h), by only stating that the defendant must have two prior felony convictions. However, U.S.S.G. § 4B1.2, the definition section accompanying § 4B1.1, defines the term "two prior felony convictions" as requiring, among other criteria, that "sentences for at least two of the aforementioned felony convictions are counted *separately* under the provisions of § 4A1.1." (emphasis added). U.S.S.G. § 4A1.1, instructs that in order for sentences to be counted separately, they must be "[p]rior sentences in *unrelated* cases ...." The Background Notes for § 4B1.1 explain that although § 4B1.1 tracks in large part the criteria set forth by Congress in § 994(h), the Commission has modified the definition of a "career offender" to "focus more precisely on the class of recidivist offenders for whom a lengthy

---

**6.** Other circuits that have interpreted 21 U.S.C. 841(b)(1)(A) have unanimously followed the Fourth Circuit's *Blackwood* decision. *See United States v. Rice,* 43 F.3d 601, 605–06 (11th Cir.1995); *United States v. Liquori,* 5 F.3d 435, 437–38 (9th Cir.1993); *United States v. Hughes,* 924 F.2d 1354, 1360–61 (6th Cir.1991).

term of imprisonment is appropriate . . . ." Thus, the Sentencing Commission's implementation of § 994(h)—modifying Congress's language which originally contained no requirement that the prior convictions be committed on occasions different from one another, to 4B1.1 which requires the that prior convictions stem from separate unrelated offenses—is consistent with the view (regardless of whether the statute so explicitly states), that predicate prior convictions for recidivism statutes must stem from separate criminal episodes or occurrences, to justify a more drastic deprivation of liberty due to heightened concern for future dangerousness and recidivism.

### III. *Conclusion*

■ Despite the obvious distinction that U.S.S.G. § 4B1.1, 18 U.S.C. § 924(e), 21 U.S.C. § 841(b)(1)(A), *Petty I & Petty II* and *Blackwood,* all involve, sentencing enhancement provisions as opposed to a detention hearing provision, their guidance on the prevailing view as to the nature of a defendant's criminal history or recidivism deserving harsher judicial action and greater deprivation of liberty is directly applicable here. Like these statutes, the purpose of which behind is to punish a defendant for the act he committed and to keep that person in prison based on his future dangerousness, 18 U.S.C. § 3142(f)(1)(D) is also a recidivism provision with a similar purpose. Significantly, one of the primary purposes behind the 1984 Bail Reform Act is to detain a defendant based upon his dangerousness or future dangerousness. *United States v. Orta,* 760 F.2d 887, 890 (8th Cir.1985).

Thus, there appears to be a consensus that it is the number of criminal episodes, not the number of convictions acquired in any single criminal episode that is determinative of future dangerousness and risk of recidivism, that is deserving of a greater deprivation of liberty. As discussed above, that view is clearly acknowledged in the specific language of some sentence enhancement statutes, in court decisions interpreting other sentence enhancement statutes, where qualifying language is absent, and in the Sentencing Commission's guidelines on career offenders. Accordingly, in conformity with the rationale set forth by the Fourth Circuit in *Blackwood* and the general penological consensus discussed above, this Court holds that "convicted of two or more offenses" under 18 U.S.C. § 3142(f)(1)(D), requires that the predicate offenses must have been committed on occasions different from one another. The extraordinary fact of pretrial detention, with its grievous consequence to a person still presumed innocent, was not intended to be lightly allowed, or indeed widely applied. The Congress was clear: " . . . there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial." S. REP. No. 225, 98th Conf. 1st Sess. 3 (1983) at 6–7, reprinted in 1984 U.S. CODE CONG & ADM NEWS at 3188–90.[7]

---

7. The legislative history does not cite any research supporting the heightened dangerousness or high recidivism of persons with *multiple convictions,* either as part of a single episode or on separate occasions. As far as the Court can determine, the recidivism studies cited in the legislative history do not identify or discuss the criminal history of the study subjects. Shortly after its passage, the factual underpinnings of the Act's pretrial detention for recidivists in general was questioned.

More attenuated reasoning underlies the prediction that an accused is likely to com-

As the Second Circuit observed in interpreting § 924(e), the targets of such legislation are "recidivists, *i.e.,* those who have engaged in violent criminal activity on at least [multiple] separate occasions and not individuals who happen to acquire [multiple] convictions as a result of a single criminal episode." *United States v. Towne,* 870 F.2d 880 (2nd Cir.1989). In the juggling of individual liberty and community safety, it is that pattern of criminal behavior over time which has tipped the balance in favor of community safety against individual liberty.

In making this ruling, the Court is sensitive to the defendant's due process rights and the timeliness with which decisions must be made regarding detention. The Court recognizes that this ruling places the judge in the position of having to make an additional decision as to whether or not the convictions in a defendant's criminal record occurred on occasions different from one another; nonetheless, this decision can be made expeditiously so as not to delay the detention process. When determining whether there are two prior convictions, the court shall rely upon the standard articulated by the Fourth Circuit in *United States v. Williams,* for applying the recidivism provision for § 924(e),which states that

"convictions occur on occasions different from one another if each of the prior convictions arose out of a 'separate and distinct criminal episode.' " *United States v. Hudspeth,* 42 F.3d 1015, 1019 (7th Cir.1994) (en banc). In determining whether convictions arose out of separate and distinct criminal episodes, we consider such factors as whether the offenses (1) occurred in different geographic locations; (2) were of a substantively different nature; (3) and involved multiple criminal objectives or victims. *See United States v. Letterlough,* 63 F.3d 332, 335–36 (4th Cir.1995). We may apply these factors independently or in conjunction, recognizing that "if any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes." *Id.* at 336.

*United States v. Williams,* 187 F.3d 429, 431 (4th Cir.1999). Here the Government conceded that the defendant's convictions arose from the same act or transaction, but argued that the defendant was convicted of two separate offenses for which two separate sentences were imposed, qualifying as "two or more offenses" under the Bail Reform Act.

■ Applying this standard to the facts of Mr. Selby's case, the Court finds that Mr. Selby's prior record, containing the conviction for a robbery and rape resulting out of the same criminal episode in 1995, should only be counted as one conviction for purposes of 18 U.S.C.

mit additional crimes if released pending trial. Congress passed the Act in part based on studies evidencing "significant" recidivism by various classes of persons on some form of release. These statistics deserve close scrutiny. Nineteen studies included in the Act's legislative history reported recidivism rates ranging from 7% to 70%. The study that cited a 70% recidivism rate was denounced by five of its eleven authors as having little probative value. Few of the studies specified original offenses or offenses committed while on re-lease. All but one study limited the recidivism inquiry to charge or indictment rate, rather than conviction rate. Finally the majority of the studies were conducted in the District of Columbia where the recidivism rate tended to be much higher than the national statistics.

Shari J. Cohen, Note, *Circumventing Due Process: A Judicial Response to Criminal Recidivism Under the Bail Reform Act,* 15 HASTINGS CONST. L.Q. 319, 331 (1987–1988) (citations omitted).

§ 3142(f)(1)(D). The facts surrounding Mr. Selby's prior conviction are as follows: On December 17, 1994, at approximately 12:30 a.m., Mr. Selby approached the female victim entering her apartment building and asked her for directions. He forced her into her car and drove to a deserted wooded area, where he raped her and then told her to get out of the car. The defendant then drove off in the victim's car. On December 20, 1994, the defendant was charged, in the same charging document, with rape in the first degree, sex offense in the first degree, and car jacking. He pled guilty on January 17, 1995 to rape in the first degree and robbery with a dangerous and deadly weapon. He was sentenced for both of these crimes on the same day, January 17, 1995. Applying the *Williams* standard, based upon these facts, the Court concludes that the rape and robbery occurred in the same geographic location, and although the crimes were not of the same nature, they did involve the same victim; therefore, the Court finds that these convictions arose out of only one criminal episode. Thus, these convictions only count as one offense under 18 U.S.C. § 3142(f)(1)(D).