**UNITED STATES of America**

v.

**Jamel ANDERSON, Defendant.**

**Case No. 16–cr–43 (KBJ)**

United States District Court, District of Columbia.

Signed April 7, 2016

Christopher Macchiaroli, U.S. Attorney's Office, Washington, DC, for United States of America.

Cynthia Katkish, Law Offices of Cynthia Katkish, Washington, DC, for Defendant.

### DETENTION MEMORANDUM

G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon the application of the United States

that Defendant, Jamel Anderson, be detained pending trial. Defendant is charged in a one-count Indictment with possession of body armor by a felon convicted of a crime of violence, in violation of 18 U.S.C. § 931. The United States requested a detention hearing under 18 U.S.C. §§ 3142(f)(1)(D)–(E) and 3142(f)(2)(A), which the Court held on March 25, 2016, and April 4, 2016. The Court now finds that Defendant should be held without bond. This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the Indictment. Defendant offered no contrary evidence. Accordingly, the Court makes the following findings of fact:

In late 2002, Defendant was incarcerated for shooting a victim multiple times in a public street in the District of Columbia. Upon his release from incarceration on March 9, 2015, Defendant was placed on supervised release for three years. His supervision is being overseen by a supervision officer in Maryland. His term of supervised release will expire on March 8, 2018. One year after his release, with two years left on his period of supervision, Defendant found himself again in a shooting in the District, this time while he was wearing a bulletproof vest.

On Thursday, March 10, 2016, at approximately 1:00 a.m., patrol units with the D.C. Metropolitan Police Department ("MPD") were dispatched to the 4700 block of Benning Road, Southeast, Washington, D.C., to investigate a report of the sounds of gunshots. Upon arriving at the scene, officers located two males suffering from gunshot wounds—Defendant and his associate, Ray Brown. Officers observed Defendant wearing body armor, that is, a bulletproof vest, at the time he was shot. Crime-scene photographs confirm that Defendant was wearing body armor at the time he was found. Brown was not wearing body armor. Defendant had suffered a single gunshot wound to his right shoulder and was transported to a local hospital. Defendant refused to provide identifying information to law enforcement or medical personnel, but was subsequently identified during MPD's investigation of the shooting.

Officers also recovered two handguns, a .38 caliber revolver and a Czech 7.62 × 25 semiautomatic pistol, on the ground approximately 10–15 feet away from each other in a parking lot in front of a residential apartment building at 4742 Benning Road, Southeast. The revolver had what appeared to be blood on it. A blood trail led from the area of where the guns were recovered to the location where MPD officers found Defendant and Mr. Brown. Spent cartridge casings were recovered from or near both firearms. Located on the other side of the parking lot were spent .45 caliber cartridges from a different handgun than the two guns recovered from the scene. Damage to vehicles in the area indicates that the user of the .45 caliber firearm fired toward the location of where the two handguns were recovered.

Mr. Brown told the police that he and Defendant went to speak to some young males when someone shot at them in the area near where the guns were recovered. Mr. Brown then said that he ran in the direction where he was later found by the police. Mr. Brown did not acknowledge his possession or use of a firearm. The government contends that the shell casings found near the .38 caliber revolver and the Czech 7.62 × 25 semiautomatic pistol demon-

strate that the users of the two handguns fired toward the user of the .45 caliber handgun. However, the government conceded that there were no bullet marks on vehicles or other surfaces on the side of the parking lot where the user of the .45 caliber firearm allegedly stood.

Defendant has several prior convictions. These include two misdemeanor convictions for Possession of Marijuana and Cocaine, a felony conviction for failure to appear for a scheduled trial in 2002, and Aggravated Assault and Possession of a Firearm During a Crime of Violence ("PFCOV") convictions. As explained above, Defendant is currently on supervised release for the Aggravated Assault and PFCOV charges after spending twelve years in prison.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even absent a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir.1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir.1986). The government must prove that the defendant poses a danger to the community by clear and convincing evidence, 18 U.S.C. § 3142(f), but need only prove that the defendant is a flight risk by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 443 (D.C.Cir. 1996).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and reasonably assure the safety of any other person and the community, the Court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The Court must weigh all of the pertinent factors and provide a detailed explanation of the reasoning behind its ultimate conclusion. *U.S. v. Nwokoro*, 651 F.3d 108, 111 (D.C.Cir.2011).

## DISCUSSION

### A. Ten–Day Detention Under Section 3142(d)

At the initial appearance on March 22, 2016, the Court granted the government's request that Defendant be temporarily detained pursuant to section 3142(d)(1)(A)(iii). That section provides that

[i]f the judicial officer determines that [the defendant] is, and was at the time the offense was committed, on probation or parole for any offense under Federal, State, or local law[,] such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official.... If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law govern-

ing release pending trial or deportation or exclusion proceedings.

18 U.S.C. § 3142(d)(1)(A)(iii). The government requested that Defendant be held for ten days pursuant to this section so that it could contact Defendant's Maryland supervision officer. The Court granted that request. That ten-day period expired on April 5, 2016. On April 4, 2016, the government reported to the Court that Defendant's Maryland supervision officer has applied with the Maryland parole board for a warrant for Defendant's arrest for alleged violations of his conditions of supervised release. As of April 4, 2016, that application had not been ruled upon.

## B. Eligibility for Pretrial Detention Under Section 3142(f)

The government also requested that Defendant be held pending trial pursuant to sections 3142(1)(f)(1)(D), 3142(f)(1)(E), and 3142(f)(2)(A) of the Bail Reform Act. Section 3142(f)(1)(D) provides that the government may request detention in a case that involves "any felony if such person has been convicted of two or more offenses" that would constitute "crimes of violence" as defined in the Bail Reform Act. *Id.* § 3142(f)(1)(D). Section 3142(f)(1)(E) allows the government to request detention in a case involving "any felony that is not otherwise a crime of violence that involves ... the possession or use of a firearm or destructive device." *Id.* § 3142(f)(1)(E). Section 3142(f)(2)(A) provides that the government may request detention when a case "involves a serious risk that [the defendant] will flee." *Id.* § 3142(f)(2)(A). As explained below, the Court finds that sections 3142(f)(1)(D) and (f)(2)(A) each provide an independent basis for the government to request pretrial detention in this case. Because it finds that Defendant is eligible for pretrial detention under those sections, the Court need not reach the government's alternative argument that Defendant is eligible for detention under section 3142(f)(1)(E).

### 1. *Section 3142(f)(1)(D)*

Defendant argues that pretrial detention is not authorized by section 3142(f)(1)(D) because he has not previously been convicted of two or more crimes of violence. There is no question that Defendant's Aggravated Assault conviction constitutes a crime of violence pursuant to section 3142(f)(1)(D). The parties dispute, however, whether PFCOV, a violation of D.C.Code § 22–4504(b), also constitutes a crime of violence under the Bail Reform Act. Defendant argues that PFCOV is not a freestanding crime of violence but is akin to an enhancement of a conviction for a crime of violence.

■ The Court finds that PFCOV is a crime of violence as defined in section 3156(a)(4)(B) of the Bail Reform Act. That section defines a "crime of violence," in relevant part, as an "offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B). First, PFCOV is a felony. Second, the Court finds that using a firearm during a crime of violence—here, Aggravated Assault—certainly involves a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* Put simply, using or brandishing a gun in a fight increases the risk of physical force and injury against those involved. Indeed, PFCOV is much like the U.S.Code offense of using, carrying, and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C § 924(c)(1), which itself has been deemed a crime of violence under the Bail Reform Act. *See United States v. Delgado*, 985 F.Supp.2d 895, 898

(N.D.Iowa 2013) (treating a violation of section 924(c)(1)(A) as a prior "crime of violence" for detention purposes).

Conversely, PFCOV is unlike a charge under 18 U.S.C. § 922(g), possession of a firearm by a convicted felon, which our Court of Appeals has found is not a crime of violence under the Bail Reform Act. *See United States v. Singleton*, 182 F.3d 7, 14 (D.C.Cir.1999). In *Singleton*, the Court of Appeals found that the mere possession of a firearm by a felon does not create a "substantial risk" that the firearm will be used. *Id.* But here the charge is not one of simple possession by a felon. Rather, Defendant is charged with possessing a firearm during the commission of a crime of violence. Again, using or brandishing a gun during an assault (or any other crime of violence) no doubt substantially increases the risk of physical force and violence to those involved.

■ The fact that both crimes of violence are predicated on the same underlying facts raises another issue. Defendant argues that even if PFCOV is a crime of violence, section 3142(f)(1)(D) is still inapplicable because the "two or more offenses" language requires that the offenses arise from separate occurrences. The Court does not agree.

In *United States v. Pereira*, 454 F.Supp.2d 40, 42 & n. 5 (D.Mass.2006), the court held that a detention hearing was appropriate pursuant to section 3142(f)(1)(D) because the defendant had, like here, two state-law convictions— breaking and entering into a vehicle at night with intent to commit a felony and possession of burglarious tools for the purpose of theft—which were crimes of violence under federal law even though they arose from the same predicate facts. In rejecting the argument that prior crimes of violence must occur on separate occasions, the district court explained:

[S]ection 3142(f)(1)(D) requires only that a person "has been convicted of two or more [of the predicate] offenses." By contrast, the Armed Career Criminal Act ("ACCA") requires "three previous convictions ... committed on occasions different from one another," 18 U.S.C. § 924(e)(1), in order to trigger the mandatory minimum sentence under that statute. The absence of such qualifying language in the Bail Reform Act suggests to the Court that the pretrial detention context does not require that the offenses arise out of separate criminal episodes. Further, the purpose of the provision in the ACCA is to add to a defendant's *punishment* because of his prior criminal acts; the purpose of the Bail Reform Act is to release only those defendants as to whom conditions of release can be fashioned which will reasonably assure the *safety of other persons and the community.* It is therefore quite logical to impose greater punishment only if the prior criminal acts occurred at separate times but to assess the risk to the community if a defendant is released on bail based on his prior convictions regardless of whether they arose out of the same or different courses of conduct.

*Id.* at 42 n. 5 (emphasis in original). In finding detention appropriate, the district court rejected a contrary holding in *United States v. Selby*, 333 F.Supp.2d 367, 369 (D.Md.2004), where the court found that in order for a defendant to have been convicted of two or more crimes of violence under the Bail Reform Act, the offenses must have been committed on different occasions. The *Selby* court reasoned that the Bail Reform Act focuses on "the number of criminal episodes, not the number of convictions acquired in any single criminal episode," because the former "is determinative of future dangerousness and risk of

recidivism, which is deserving of a greater deprivation of liberty." *Id.* at 377.

The Court is persuaded by the reasoning of *Pereira* and respectfully disagrees with the rationale of *Selby*. The language of the Bail Reform Act is clear. It states that a defendant is eligible for detention if he "has been convicted of two or more" crimes of violence. 18 U.S.C. § 3142(f)(1)(D). As the court in *Pereira* observed, the Bail Reform Act, by its own language, does not require that the predicate offenses be committed on separate occasions. Congress knows how to draft statutes requiring that predicate offenses occur on separate occasions, *see* 18 U.S.C. § 924(e)(1), and it did not do so here. The Court presumes that Congress omitted this language from the Bail Reform Act intentionally. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 342, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply[.]").

### 2. *Section 3142(f)(2)(A)*

As noted above, section 3142(f)(2)(A) authorizes detention in a case that "involves a serious risk that [the defendant] will flee." 18 U.S.C. § 3142(f)(2)(A). As will be explained further below, *see infra* Section B.2, Defendant's criminal history and inability to comply with court-ordered supervision demonstrate that he is a serious flight risk. As a result, section 3142(f)(2)(A) provides an independent basis for detaining Defendant.

Accordingly, Defendant is eligible for pretrial detention.

---

**1.** The Pretrial Services officer assigned to Defendant's case in this Court attempted to contact the Maryland supervision officer prior to the April 4, 2016, hearing, in order to obtain

### C. Whether Defendant Should Be Detained

The Court will now analyze whether Defendant should be detained pending trial in this matter.

#### 1. *The Parties' Arguments*

■ The government contends that Defendant's prior criminal history, the violent circumstances of his encounter on March 10, 2016, and his possession of body armor demonstrate that Defendant should be held without bond pending trial to ensure the safety of the community. The government argues that the gravity of Defendant's instant offense is increased because he is currently on supervised release for Aggravated Assault and PFCOV. Indeed, Defendant committed the instant offense only one year after being released from incarceration for those prior offenses. The government reports that Defendant's Maryland supervision officer has indicated that Defendant's adjustment to supervision has been "marginal" and that the officer believes that Defendant should be detained in this matter given the close similarity between the crimes at issue in this case and the crime for which Defendant is on supervision.[1]

The government also argues that Defendant represents a flight risk, citing Defendant's 2002 conviction in D.C. Superior Court for failure to appear for a scheduled trial in violation of the Bail Reform Act and a 2002 Escape charge. The Escape charge arose during Defendant's D.C. Superior court case for possession of cocaine. As part of his conditions of release in that case, Defendant was ordered to stay at the Extended House, a halfway house located in Washington, D.C. On December 31, 2001, Defendant signed out of Extended

---

further explanation of why Defendant's compliance with his supervision has been "marginal." However, her attempts were unsuccessful.

House and departed for work. Defendant failed to return as scheduled and was placed on escape status. Defendant was arrested ten months later. Defendant's Escape charge in D.C. Superior Court was dismissed pursuant to a 2003 plea agreement in which he pled guilty to a felony Bail Reform Act violation for failure to appear at trial, Aggravated Assault, and PFOCV in D.C. Superior court.

At the hearing, Defendant argued that he should not be detained. First, Defendant seizes upon the technical nature of the crime, contending that absent his prior felony conviction, his conduct in wearing the bulletproof vest would not be illegal. Second, Defendant claims that his punishment, thirteen years in prison, for his Aggravated Assault and PFCOV offenses was sufficient and that his prior offenses should not overshadow the relatively minor charge here. Third, Defendant represented that he has had no other rearrests other than his arrest in the instant case and that he has worked full-time since his release. Additionally, Defendant questions the strength of the government's proffer regarding the firearms, contending that no evidence, at least at this time, connects Defendant to those guns. Moreover, Defendant is not facing a charge related to the firearms—only the body armor. Defendant emphasized that no matter what evidence the government may collect as it builds its case regarding the firearms, including DNA, ballistics, or eyewitness evidence, that evidence is not before the Court today and cannot form a basis for detention. Finally, Defendant indicated that his large family, many members of which were present in the courtroom, are supportive of him. Defendant concluded that because of this family support, coupled with his history of compliance on supervision, the age of his prior offenses, and the relatively minor nature of the instant offense, the government had

failed to prove that he is a flight risk or that he would pose a danger to the community if released prior to trial.

The Court will now examine the four factors enumerated in section 3142(g) in turn.

### 2. The Four Factors of Section 3142(g)

#### a. Nature and Circumstances of the Charged Offense

The first factor, the nature and circumstances of the charged offense, favors detention. The grand jury found probable cause to believe that Defendant unlawfully possessed body armor after being convicted of a felony crime of violence. Standing alone, such a charge may not typically justify a defendant's pretrial incarceration. Yet the circumstances of Defendant's offense are far more troubling. Here, the body armor was not found in Defendant's closet. Rather, it was found on his person after he was plainly involved in a gunfight in a parking lot in front of a residential apartment building. Defendant's use of body armor in this case clearly posed a significant danger to lives in the community.

#### b. The Weight of the Evidence

The Court finds that the weight of the government's evidence against Defendant is very strong. There is no real question about Defendant's prior conviction or his possession of the body armor in this case. Therefore, the Court finds that the weight of the evidence also favors detention.

#### c. The History and Characteristics of the Defendant

This factor also favors detention as well. Section 3142 directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol

abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)–(B).

In this case, Defendant's serious prior conviction for Aggravated Assault with a firearm, arising from Defendant's shooting a victim multiple times, indicates that Defendant would pose a severe danger to the community if released. Although Defendant has received previous punishment for those crimes, the government has charged him with an offense arising from very similar violent scenario just one year after being released from prison. Furthermore, he committed the instant offense while on supervised release for his assault conviction, indicating that he is unwilling or unable to comply with the conditions of court-ordered supervision. Indeed, Defendant's own supervision officer in Maryland believes that Defendant should be detained in this matter. Additionally, Defendant has a serious felony conviction arising from his violation of the Bail Reform Act. Accordingly, the Court finds that this factor favors detention.

### d. The Danger to the Community.

The fourth factor, the danger to the community posed by the defendant, also weighs in favor of detention. The danger to the community posed by gunfights in public streets cannot be overstated. The Court is cognizant of the innocent lives that may be lost when such reckless violence breaks out. The circumstances of the charged offense, taken together with Defendant's serious criminal history, demonstrate the clear danger he poses to the community were he to be released.

### 3. Defendant Would Be a Danger to the Community if Released and Defendant is a Flight Risk

■ For the aforementioned reasons, the Court has little confidence that there is any condition or combination of conditions that would keep the community safe if Defendant was released. Further, even if Defendant did not pose a danger to the community, the Court finds that he should be detained for the independent reason that Defendant is a flight risk. First, Defendant faces up to three years in prison if he is convicted and the government's case against him, to put it bluntly, seems at this point insuperable. See 18 U.S.C. § 924(a)(7). Second, the government points to his prior charge of Escape, in which Defendant absconded from a halfway house for ten months. Defendant also has a prior felony Bail Reform Act conviction for his failure to appear for a scheduled trial in D.C. Superior Court. Finally, Defendant's entire course of conduct indicates his unwillingness to follow the directions of a court while on release. Therefore, the Court finds that the government has shown, by a preponderance of the evidence, that Defendant is a serious risk of flight were he to be released.

### CONCLUSION

Based on consideration of all the evidence and the factors set forth in section 3142(g) and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Defendant to be released, and by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required.

Therefore, the government's motion for pretrial detention is granted.